OTTOMAR W. HEYER *et al.*

*v.*

MAX H. ALEXANDER *et al.*

*Filed at Mt. Vernon January 22, 1884.*

|108  385|
|122  554|
|122  557|
| 27a 298|
|128  227|

1. PRACTICE—*continuance of motion for new trial.* In attachment suits a trial was had upon the issues presented by several parties interpleading and claiming the property attached, resulting in a finding against the interpleaders, and upon motion for a new trial the cause was continued to the next term of court, when final judgment was rendered in favor of the plaintiffs in attachment: *Held,* that there was no error in not rendering judgment at the term the trial was had, and in rendering the same at the next term.

2. ATTACHMENT—*practice as to trial of several interpleaders.* In an attachment where several different parties interplead, each claiming the same attached property, it is a matter of discretion in the trial court to order the issues to be tried separately as to each claimant, or all at one time. Section 29 of the Attachment act makes no provision for separate trials in such a case.

25—108 ILL.

3. SAME—*disposition of proceeds of personal property sold.* Where personal property attached has been sold as perishable property, it will be presumed that the court trying the case has made a proper disposition of the proceeds of the personal property, and apportioned the proceeds of the property attached among the several judgment and attachment creditors, and it is incumbent on a party alleging error to show it, to entitle him to a reversal.

4. SAME—*who may question distribution of proceeds.* A party interpleading in an action of attachment, and claiming all the property attached, who, on trial of the interplea, is found to have no claim on the property, will not be heard to object to the disposition made of the proceeds of the property among the several creditors, if the judgment is proper in other respects.

5. STATUTE—*of State, has no extra-territorial force on property—conflict of laws.* A statute or judgment of a court of our State can not in the least affect the title or possession of property beyond its territorial limits, except where the court may compel one subject to its jurisdiction to convey in accordance with the laws of the State where the property may be.

6. FOREIGN AND DOMESTIC CREDITORS—*of their relative rights—conflict of laws.* A decree of court appointing an assignee or receiver to administer a debtor's property for the benefit of his creditors, whatever may be its effect in the State where it is rendered, has no extra-territorial effect on the debtor's real estate in foreign jurisdiction.

7. A non-resident debtor having real estate in this State may pass the same to his assignee by a deed of assignment executed in his State, where such debtor has no creditors resident in this State; but such a conveyance will not be allowed to withdraw the debtor's assets and means from this State, to the detriment or injury of domestic creditors. It is subject to the claims of resident creditors where the property is located.

8. The rule in such case is the same as obtains in respect to the administration of estates of non-resident decedents. While ancillary administration may be had in this State, the courts will see that domestic creditors are first fully paid, and where the residuum of the assets may be transferred to the court in which the original administration is had. In analogy to this doctrine, a foreign debtor can not place his property in trust for creditors so as to defeat his creditors in the State where his property is situated.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. W. C. KUEFFNER, for the plaintiffs in error:

The law is well settled that assignments of personal property, if valid when made, will be upheld everywhere; and where there has been an actual transfer of possession, the transfer will be sustained everywhere.   Burrill on Assignments, (ed. of 1882,) sec. 308.

A voluntary assignment in one State, valid by the laws of that State, will operate to convey personal property not already subject to liens, in whatever State it may be found. Burrill on Assignments, (ed. of 1882,) p. 437, sec. 302, and authorities cited; *Larrimore* v. *Jenckes,* 21 How. 126; Story on Conflict of Laws, 423; 2 Kent's Com. 455; *Means* v. *Hapgood,* 19 Pick. 105.

If good in the State where made, it will pass personal property in another State, although it would not have been good if made under the laws of such other State.   *Caskie* v. *Webster,* 2 Wall. Jr. 131; *Law* v. *Miller,* 18 Pa. St. 185; *Kelstadt* v. *Reilly,* 55 How. Pr. 373; *Kelly* v. *Crapo,* 45 N. Y. 86; *Ackerman* v. *Cross,* 54 id. 29; *Slatter* v. *Carroll,* 2 Sandf. 573.

The true rule and public policy is this: that a voluntary assignment made abroad, inconsistent in substantial respects with our statute, should not be put into execution here to the detriment of our citizens, but for all other purposes, if valid by the *lex loci,* it shall be carried fully into effect.   *Beatly* v. *Whittemore,* 19 N. J. Eq. 462; *Moore* v. *Bonnell,* 31 N. Y. 90; Burrill on Assignments, p. 451, sec. 310.

A voluntary assignment of real property is not inoperative and void where such property is situated, merely because it was made in another State, nor is it necessarily repugnant to the laws of the former State because not conformable to them.   (Burrill on Assignments, p. 442, sec. 304; *Chafee* v. *Fourth National Bank,* 71 Maine, 514.)   And though the deed of assignment be void in the State where made, if it is effectual to pass title to land in another State, it may be sustained

by the courts of the latter State against an attaching creditor from a third State. (*First National Bank* v. *Hughes et al.* 10 Mo. App. 8.) And the real estate assigned passes by the mere delivery of the deed. Burrill on Assignments, p. 388, sec. 270.

The circuit court erred in directing that the issues between the plaintiffs and defendant, and between the plaintiffs and the interpleaders, be tried together. The statute (chap. 11, sec. 29, Rev. Stat.) contemplates separate trials, and on general principles the parties were entitled to it. A jury ought not to be confused by being compelled to try numerous issues between different parties at the same time.

Messrs. HAY & KNISPEL, for the defendants in error:

The transfer of title to real estate can only be effected in the mode recognized by the laws of the State where it lies. *City Ins. Co.* v. *Commercial Bank*, 68 Ill. 348.

A judgment or attaching creditor and a purchaser are equally protected against an unrecorded deed, of which they had no notice. *Massey* v. *Westcott*, 40 Ill. 160; *Morrison* v. *Kelly*, 47 id. 433; *Jones* v. *Jones*, 16 id. 117.

An assignee for the benefit of creditors is not a purchaser for value. He takes subject to all equities and liens against the assignor. *Bridgeford* v. *Barbor*, 4 Ky. L. 404; *Talcott* v. *Dudley*, 4 Scam. 427; Burrill on Assignments, 439.

An assignment made by an insolvent debtor in another State, will be permitted to operate upon property in this State, except so far as it may conflict with our own laws or policy, or be prejudicial to our own citizens. *First National Bank* v. *Hughes*, 10 Mo. App. 8.

An assignment by law has no legal obligation out of the territory of the law maker. *Milne* v. *Moreton*, 6 Binn. 353; *Holmes* v. *Remsen*, 20 Johns. 229; *Taylor* v. *Geary*, Kirby, 313; *Chevalier* v. *Lynch*, 1 Doug. 170; *Waring* v. *Knight*, 1 Cooke, 407; *Harrison* v. *Sterry*, 5 Cranch, 289.

Assignment in trust for creditors can not transfer real estate in another State.  Burrill on Assignments, 334, 406; Story on Conflict of Laws, (3d ed.) 517, 525, 527; *United States* v. *Crosby,* 7 Cranch, 115; *McCormick* v. *Sullivan,* 10 Whart. 192; *Osborn* v. *Adams,* 18 Pick. 245; *Rogers* v. *Allen,* 3 Ham. 488.

An assignment by a non-resident debtor can not be allowed to operate upon property so as to defeat an attachment of a resident creditor, made subsequent to the assignment.  *Fox* v. *Adams,* 5 Greenlf. 245; *Ingraham* v. *Geyer,* 13 Mass. 146; *Fall River Iron Works Co.* v. *Croade,* 15 Pick. 11; *Dunlap* v. *Rogers,* 47 N. H. 281.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Defendants in error brought an action of assumpsit in the St. Clair circuit court, against Ottomar W. Heyer, who resided in Missouri, and also sued out a writ of attachment in aid. On the 2d of December, 1882, the writ was levied on a piece of ground in East St. Louis, on which defendant had a lease for ten years.  On this piece of ground defendant had a glucose factory, and, connected with it, material and other personal property.  On the next day the writ was also levied on a portion of this personal property in the factory building, but it was not removed from the building.  On the 28th day of November, Dank Brothers & Co. had caused an attachment against Heyer to be levied on this lot and a portion of the personal property, and a custodian was placed in possession of the property in the building, and it was not removed therefrom.  On the 29th of November, Heyer made an assignment of his property for the benefit of his creditors.  The assignment was made in Missouri, under the laws of that State, and it is not denied that it conformed to the requirements of those laws.  It was recorded in St. Louis, and on the 3d of December following, it was recorded in St. Clair county, in this State.  The trust deed purports to convey the grantor's

right, title and interest "in and to all of the real estate, lands, tenements, personalty, goods, chattels, moneys, choses in action, accounts, notes, property of every kind, nature and description whatever, and wherever situated," excepting property exempt from execution under the laws of Missouri. On the 29th of November the assignee, Muench, appointed P. B. Fenske agent, to take possession for him of all of Heyer's property in this State. This appointment was in writing. He, on the same day, wrote to the sheriff of St. Clair county, notifying him that he had been appointed assignee, and the notice was received by the sheriff before the levy was made by him, on the 2d of December. Fenske, on the 29th of November, went to the factory in East St. Louis, and employed Bauer, Heyer's superintendent, to keep the factory and property for Muench until further orders. The custodian placed in charge of the property on the 28th of November remained in charge of the property, and Bauer claimed possession of the property after the 29th of the month. It is claimed that Taussig, one of the plaintiffs in the attachment, who levied on the leasehold interest on the 2d, and the personal property on the 3d, of December, had notice of the assignment before suing out the writ of attachment. The first levy, under the Dank attachment, only embraced a part of the personal property. Soon after the levy the sheriff sold a part of the property levied on, as perishable, and on the 5th of January, 1882, the balance was sold, under an order of the St. Louis circuit court, and the sale was approved. The purchaser sold the property to the St. Louis Syrup, Glucose and Grape Sugar Company. Muench, the trustee, and that company, filed interpleaders, each claiming all the property levied on, and issues were formed. The interpleaders moved the court for a separate trial, but the court denied the motion. A trial was had by the court without a jury, by consent, and the court found the property subject to the attachment. This was at the February term. Motions for a new trial were

entered, which were overruled at the May term, and a personal judgment was rendered in favor of plaintiff for $902.56, against defendant, with an order for a special execution for the sale of the real estate levied on under the attachment, but no order was made as to the personal property.

The court refused to hold the following propositions, asked by the interpleaders, to be the law in the case:

"On behalf of the interpleaders the court is requested to declare the law to be, that the deed of assignment from Otto-mar W. Heyer to Hugo Muench, introduced in evidence, was sufficient to convey to said Muench any real estate, or any interest therein, situate in the State of Illinois, belonging to said Heyer.

"The court is further requested, on behalf of said interpleaders, to declare the law to be, that said deed of assignment from Heyer to Muench was sufficient, if actual possession was taken under it of the real estate involved, before the rights of others attached, to convey to said Muench any real estate, or any interest therein, of said Heyer, situate in the State of Illinois, so as to enable said Muench, or his grantee or grantees, to hold the same against a subsequent attaching creditor having notice of said conveyance.

"The court is further requested, on behalf of said interpleaders, to declare the law to be, that the words of general description contained in said deed from Heyer to Muench were sufficient to convey real estate, or any interest therein, of said Heyer, situate in the State of Illinois, if the conveyance was otherwise valid."

Plaintiffs in error removed the case on error to the Appellate Court for the Fourth District. On a trial in that court the judgment of the circuit court was affirmed, and the case comes to this court, on a certificate under the statute, on error from that court.

Plaintiffs in error urge a reversal on the grounds that the Appellate Court erred in holding that the language of the

deed of trust was not sufficient to pass title to property of the grantor situated in this State, as against creditors residing therein; in not reversing because the circuit court refused separate trials to the interpleaders; in not making an order disposing of the personal property levied on under the attachment; and in finding the amount due to, and rendering judgment in favor of, defendants in error, at the May term, when the issues were found at the February term. We shall consider the errors in the inverse order of their assignment.

The record discloses the fact that at the February term the case was submitted for trial, the evidence heard, and the issues found for plaintiffs. A motion for a new trial was entered, and the case continued. At the next term the motion was overruled, and a judgment entered in favor of plaintiffs. It is beyond our comprehension to see any, the slightest, error in this. No reason is shown, nor is the slightest injury to the interpleaders suggested. The case was continued to determine whether a new trial should be granted. All know that had judgment been entered at the February term, that would have, in effect, overruled the motion for a new trial. We are unable to see the slightest reason for holding this was error.

The circuit court tried all of the issues on the several interpleaders together, having refused to order separate trials. This is urged as error. The interpleaders were all in one case, and related to the same property. We therefore see no objection to trying the issues at one and the same time. It, we think, was in the discretion of the court to have ordered them to be tried separately, or at one time. The 29th section of the Attachment act is referred to as providing for a separate trial. It provides that when an interpleader is filed, if neither party shall apply for a continuance the court shall immediately impanel a jury to try the issue of the ownership of the property. It was evidently the design of the legislature to have that issue speedily determined, as, if it should

be found for the claimant, that would terminate the proceedings in attachment. But that section makes no provision for separate trials in case there are several interpleaders. That is left to be regulated by the practice of the court.

It is next urged that the court should have made an order disposing of the money arising from the sale of the personal property. The 37th section of the Attachment act provides that "all judgments in attachments against the same defendant, returnable at the same term, and all judgments in suits by summons, *capias,* or attachment against such defendant, recovered at that term or at the term when the judgment is rendered, shall share *pro rata,* according to the amount of the several judgments, in the proceeds of the property attached, either in the hands of the garnishee or otherwise," etc. The law presumes that the judgment is right, and it is for plaintiffs in error not only to allege error, but to show it, to entitle them to a reversal. We must presume there were others who had brought suits to the same term, who were, or might be, entitled to participate in the proceeds of the property. In fact, the record discloses the fact Dank Brothers & Co. commenced a suit in attachment against Heyer to the same term. Again, if the judgment was proper in other respects, it is no concern of plaintiffs in error what disposition is made of the money. If they have no right to it they can not urge any error as to its disposition. There is no force in this objection.

We now come to the consideration of the important and controlling question in the case,—that is, whether the deed of assignment was operative to pass the title to the property as against creditors in this State. It is obvious that neither the statute of Missouri nor a judgment of a court in that State can in the least affect the title or possession of property beyond its territorial limits. We consider that as the settled law, beyond all dispute. But the owner of real property in this State, although a citizen of another State, may,

under our statute, convey it by conforming to its require-
ments in the execution of the deed of conveyance.

We shall now consider the question whether the deed of
trust operated to pass the title to this leasehold estate beyond
the reach of the attachment of the domestic creditors.

There seems to be some confusion growing out of the fact
that no distinction is made, in some cases, between assign-
ments made by decree of court and a conveyance by the
owner in trust for specified purposes, as, for the payment of
his debts.   A decree of court appointing an assignee to ad-
minister the debtor's property for the benefit of his creditors,
whatever its effect in the State where it is rendered, has no
extra-territorial effect on the debtor's real estate in another
or foreign jurisdiction.   But this is not true of conveyances
of real estate lying in a different State from the residence of
the owner.   In all the States of the Union their laws author-
ize non-residents to convey real estate by conforming to the
requirements of their laws.   Thus it is seen there is a broad
distinction between a foreign decree and a conveyance by a
non-resident.   Neither a statute nor decree of another State
can directly affect titles to land in this State.   No doubt a
court of chancery may require an owner of lands in a different
State to convey them to a person entitled in equity to the prop-
erty, and when so conveyed, if the laws of the State where
the lands are situated are observed, the title would pass.   It
would, in this case, seem to be clear that the leasehold estate
passed by this deed of assignment, subject to such restric-
tions as our laws may impose.   But after so conveying this
estate the grantor declared a trust.   The question is, will our
laws permit that trust to be unconditionally enforced as
against his creditors resident in this State?   This convey-
ance is only valid by the comity between the States, and the
same comity in some cases imposes terms upon the convey-
ance for the protection of the inhabitants of the State where
the property to be affected is situated.   In some of the States

it has been held that a deed of assignment by a non-resident debtor to a trustee for payment of debts will not be enforced against creditors residing in the State where the land is situated.   In the case of *Chafee* v. *Fourth National Bank,* 71 Maine, 514, it was held, "that an assignment made by an insolvent debtor in another jurisdiction will not operate upon property in this State so as to defeat the attachment of a creditor residing here.   *   *   *   Comity between States is not thus to be extended to the prejudice of our own citizens." The doctrine is, that such a conveyance is subject to the claims of resident creditors where the property is located. This we regard as the true rule.   It is not just or fair that creditors in this State should be compelled to go to a foreign State to receive a *pro rata* share of the debtor's property, when they perhaps extended credit alone upon the faith of the debtor's property in this State, and to which they looked for payment.

The recognized law, well settled and of uniform application, in reference to the administration of estates, is, that where a foreign administrator or executor takes out new or ancillary letters in another country, the creditors residing in such country must be first paid.   In regard to the administration of personal property in a State foreign to that in which a debtor dies, Story (Conflict of Laws, sec. 512,) says: "In regard to the title of executors and administrators, derived from a grant of administration in the country of the domicile of the deceased, it is to be considered that that title can not, *de jure,* extend, as a matter of right, beyond the territory of the government which grants it, and the movable property therein.   As to movable property situated in foreign countries, the title, if acknowledged at all, is acknowledged *ex comitate,* and, of course, it is subject to be controlled or modified as every nation may think proper with reference to its own institutions, and its own policy, and the rights of its own subjects. And here the rule   *   *   *   applies, with great strength,

that no nation is under any obligation to enforce foreign laws prejudicial to its own rights, or to those of its own subjects. Persons domiciled and dying in one country are often deeply indebted to foreign creditors living in other countries, where there are personal assets of the deceased. In such cases it would be a great hardship upon such creditors to allow the original executor or administrator to withdraw those funds from the foreign country without the payment of such debts, and thus leave the creditors to seek their remedy in the domicile of the original executor or administrator, and perhaps there meet with obstructions and inequalities in the enforcement of their own rights from the peculiarities of the local law."

In section 513 he further says: "The right of a foreign executor or administrator to take out such new administration is usually admitted, as a matter of course, unless some special reason intervenes to vary or control it, and the new administration is treated as merely ancillary or auxiliary to the original foreign administration, so far as regards the collection of the effects and the proper distribution of them. Still, however, the new administration is made subservient to the rights of the creditors, legatees and distributees who are resident within the country where it is granted, and the residuum is transmissible to the foreign country only when a final account has been settled in the proper tribunal where the new administration is granted, upon the equitable principles adopted by its own law in the application and distribution of the assets found there."

This is the principle that the comity between the States requires that administration be granted to the foreign administrator on the implied condition that the creditors of the State where the property is found shall be first paid from the assets of the foreign deceased debtor. In analogy to this doctrine, a foreign debtor can not place his property in trust so as to defeat his creditors in the State in which this prop-

erty is situated. We are not prepared to hold, nor do we decide, that this doctrine applies to any conveyance except an assignment by a debtor for the benefit of his creditors. That is the question presented in this case, and we decide it alone. That the States have the right to discriminate in favor of domestic creditors, and against foreign creditors, was fully recognized by the framers of the Federal constitution, and the recognition of the principle was one of the grounds for providing for a general bankrupt act. Had there been such a law in force, no such assignment could have been made.

This case is unlike the case of *Chicago, Milwaukee and St. Paul Ry. Co.* v. *Keokuk Northern Line Packet Co. (ante,* p. 317.) In that case the property was personalty, that passed on its sale by delivery, and situated in Missouri, where the receiver was appointed, and the title vested in him by his appointment, and the property was brought temporarily into this State, without any intention of its remaining permanently. But in this case the property was permanently located in this State, and is still here. It was here when the conveyance was made. In this there is a broad and marked distinction between the two cases. The circuit court therefore did not err in refusing to hold the propositions asked by the interpleaders, as the law governing this case.

It is urged that appellee had notice of the deed of assignment before he commenced this suit, or such notice as put him on inquiry. We are precluded by statute from reviewing controverted facts in cases coming here from the Appellate Court. That was a controverted fact, and the Appellate Court has conclusively determined it, and it is beyond our power to review that fact. But that question is immaterial to this decision.

Perceiving no error in the record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*