# A. D. JUILLIARD & CO.

### *v.*

## LEWIS MAY, Assignee.

*Filed at Ottawa October 31, 1889.*

| 130 | 87 |
|---|---|
| 151 | 66 |
| 153 | 640 |
| 130 | 87 |
| 160 | 497 |
| 130 | 87 |
| 156 | 548 |
| 130 | 87 |
| 55a | 202 |
| 130 | 128 |
| 162 | 573 |
| 162 | 579 |
| 57a | 593 |
| 130 | 162 |
| 53a | 333 |
| 53a | 366 |
| 54a | 596 |
| 55a | 197 |
| 58a | 273 |
| 130 | 87 |
| 68a | 42 |
| 130 | 87 |
| 173 | 260 |
| 130 | 87 |
| 82a | 468 |
| 130 | 87 |
| 184 | 73 |
| 86a | 83 |
| 86a | 85 |
| 86a | 372 |
| 130 | 87 |
| 114a | 1254 |

1. ATTACHMENT—*interpleader—the statute to be liberally construed.* The statutory interpleader to try the title to property seized by attachment, is a substantial and valuable statutory right, and as it tends to prevent multiplicity of suits, the claimant of the property who asserts such right should not be deprived of it on merely technical grounds.

2. SAME—*time of filing interpleader—waiver.* The statute allowing an interpleader as to the right of property in an attachment suit, does not, in terms, say that it shall be tried, or even interposed, before judgment in the original attachment suit. But the better practice is, first to settle the matter of the interpleader, and then render judgment upon the attachment, or, if such judgment has already been taken, to open it for the purpose of permitting the interpleader.

3. The remedy by interpleader lies in respect to both personal and real estate, but it must be interposed while the attachment suit is still *in fieri,* which is before or during the term at which final judgment is entered against the defendant in attachment.

4. If an interpleader is not filed in apt time in an attachment suit, the plaintiff should move to strike it from the files. If, however, he demurs to the pleading, this will amount to a waiver of the objection that it was filed too late.

5. SAME—*interpleader after judgment—rights protected.* Where the issue formed upon an interpleader is found for the claimant after judgment against the defendant in the attachment and the issue of special execution, the court will have ample power to see that its process is not abused by making it the means of selling the property of one for the debt of another for which the former is not legally liable. The court can protect the successful claimant in his rights of property without vacating or changing the judgment rendered at a prior term against the defendant in attachment.

6. A claimant of property attached is not bound by the judgment against the defendant in the attachment, ordering a sale of the property. He stands in the attitude of a stranger to the record.

7. SAME—*what lien enforced—the lien of the judgment or that of the attachment.* It is only the judgment lien, and not the attachment lien, that can be enforced against the property attached; but the latter still

remains effectual for the purpose of preserving a priority of lien, and may be referred to for the purpose of identification.

8. SAME—*continuance.* The statute contemplates a speedy trial of an interpleader, and yet it gives either party a right of continuance for good cause shown.

9. INSOLVENT DEBTORS—*foreign assignment— how far enforceable, here.* A voluntary assignment made in another State by a non-resident debtor, executed in conformity with our laws in respect to the conveyance of property, but which is inconsistent, in substantial respects, with our statute relating to assignments, will not be enforced here to the detriment of our citizens; but for all other purposes, if the assignment is valid by the *lex loci,* it will be carried fully into effect.

10. The provision of our statute prohibiting preferences in assignments by debtors, applies only to assignments made in this State, and not to those made in other States; and a non-resident debtor may execute a voluntary assignment, with or without preferences, as he may see fit, so long as creditors in this State are not injuriously affected thereby.

11. CONFLICT OF LAWS—*presumption.* In the absence of any allegation or proof of a statute of another State, it must be presumed that the common law obtains there, or else that the laws of such State are similar to the laws of this State.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. CONSIDER H. WILLETT, for the plaintiffs in error:

The rule of comity is never extended to real estate. Burrill on Assignments, (4th ed.) sec. 308; Westlake on Private International Law, 177; Wharton on Com. Am. Law, sec. 299; *Insurance Co.* v. *Commercial Bank,* 68 Ill. 348; *Gardner* v. *Nat. Bank,* 95 id. 298; *Gross* v. *Bunn,* 10 Neb. 217; *Hutcheson* v. *Peshine,* 16 N. J. Eq. 167; *Selkrig* v. *Davies,* 2 Dowl. 230; *Rogers* v. *Allen,* 3 Ohio, 488; *Osborn* v. *Adams,* 18 Pick. 245; *Jenks* v. *Ludden,* 34 Minn. 482; *Oakey* v. *Bennett,* 11 How. 33; Story on Conflict of Laws, sec. 448; Wharton on Conflict of Laws, sec. 273.

Comity never requires one State to enforce, as to personal property, the laws of another that are contrary to its own public policy. Rev. Stat. chap. 72, sec. 49; Wharton on Conflict of Laws, (2d ed.) sec. 490, and cases cited; *Le Chevalier* v. *Lynch,*

1 Doug. 170; *Warner* v. *Jaffray*, 96 N. Y. 246; *Guillander* v. *Howell*, 35 id. 657; *Faulkner* v. *Hyman*, 142 Mass. 53; *Heyer* v. *Alexander*, 108 Ill. 385; *Rhawn* v. *Pearce*, 110 id. 350.

Consideration and consent: *Faulkner* v. *Hyman*, 142 Mass. 53; *Swan* v. *Crafts*, 124 id. 453; *O'Hara* v. *Jones*, 46 Ill. 292.

. Residence: U. S. Const. art. 4, sec. 2, clause 1; Story on Conflict of Laws, (3d ed.) p. 47; 2 Kent's Com. (13th ed.) p. 461; *Paine* v. *Lester*, 44 Conn. 196; *Upton* v. *Hubbard*, 28 id. 275; *Insurance Co.* v. *Commercial Bank*, 68 Ill. 348; *Jenks* v. *Ludden*, 34 Minn. 482; *Gardner* v. *Nat. Bank*, 95 Ill. 298; *Heyer* v. *Alexander*, 108 id. 385; *Bank* v. *Lascombe*, 84 N. Y. 367; *Kidder* v. *Tufts*, 48 N. H. 121.

The New York statutes not being properly pleaded, can not be considered. *Pearce* v. *Rhawn*, 13 Bradw. 637; *Railroad Co.* v. *Shires*, 108 Ill. 617; Greenleaf on Evidence, (13th ed.) sec. 489.

Equity among the creditors of insolvent debtors is the declared legislative policy of Illinois, and the deed of assignment, by attempting to violate and overthrow such policy by giving preferences, is void. Rev. Stat. chap. 72; *Maberry* v. *Shisler*, 1 Harr. 349; *Zipcey* v. *Thompson*, 1 Gray, 243; *Faulkner* v. *Hyman*, 142 Mass. 53; *Pierce* v. *O'Brian*, 129 id. 314; *Johnson* v. *Parker*, 4 Bush, 149; *Richardson* v. *Rogers*, 45 Mich. 592; *Claflin* v. *Iseman*, 23 S. C. (N. S.) 416.

As the assignee gave no bond or inventory, etc., and attempted no compliance with our law concerning insolvent debtors, the deed of assignment was invalid. Rev. Stat. chap. 10, sec. 3; *Johnson* v. *Parker*, 4 Bush, 149; *Philson* v. *Barnes*, 50 Pa. St. 230; *Juliard* v. *Rathbone*, 39 N. Y. 369; *Bartlett* v. *Teah*, 1 Fed. Rep. 768.

The attachment merged in the judgment, and the order of the court quashing it was a nullity. 1 Wade on Attachments, sec. 29, p. 69; Drake on Attachments, (4th ed.) sec. 224 a; *Bagley* v. *Ward*, 37 Cal. 121; *Lynch* v. *Crary*, 52 N. Y. 181; Waples on Attachments, p. 582.

After the judgment in attachment was rendered, and after the term of court had expired without vacating the judgment, it was too late to interplead, as to the lands attached, for want of jurisdiction. Rev. Stat. chap. 11, sec. 29; *Heyer* v. *Alexander*, 108 Ill. 385; *Rhawn* v. *Pierce*, 110 id. 353.

Mr. J. S. NORTON, for the defendant in error:

It is sufficient for our purpose that this court has, after full examination of the cases in Illinois and elsewhere, reached the following conclusions:

That a non-resident debtor may, by voluntary deed, assign his land situated in Illinois, for the benefit of his creditors, except as against the claims of attaching creditors resident in Illinois. *Heyer* v. *Alexander*, 108 Ill. 385.

That the case of *Rhawn* v. *Pierce*, 110 Ill. 350, is not opposed to this doctrine, being a case of statutory or involuntary assignment.

That by the common law in this State, a debtor had the right to prefer one creditor over another, if done in good faith. *Cooper* v. *McClun*, 16 Ill. 435.

That the Illinois statute, in prohibiting preferences in assignments, is limited to assignments made in this State, and does not apply to this case, either as a prohibition or as the expression of the policy of this State. *Bentley* v. *Whittemore*, 19 N. J. Eq. 462; Burrill on Assignments, sec. 310, and cases cited, to which we add, *Female Academy* v. *Sullivan*, 116 Ill. 375, and *Cowell* v. *Springs Co.* 100 U. S. 55.

That the provision of the Federal constitution, that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States," gives to non-residents the right to resort to our courts as suitors, but does not entitle them to the preference given to residents, because residents. (*Heyer* v. *Alexander*, 108 Ill. 385.) This proposition, on which the court did not deem it necessary to cite authorities, is supported by *Chaffee* v. *Fourth Nat. Bank*, 71

Me. 514; *Connor* v. *Elliott*, 18 How. 591; *McCready* v. *Virginia*, 94 U. S. 391; *Coryell* v. *Coryell*, 4 Wash. C. Ct. 371.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The plaintiffs in error, A. D. Juilliard & Co., brought this attachment suit on the 19th of February, 1886, in the Superior Court of Cook county, against Halsted, Haines & Co., upon a judgment for $5536, rendered in the Supreme Court of the city and county of New York. The writ was levied on real estate in the city of Chicago, and was served upon garnishees. The garnishees answered on the 9th day of April, 1886, and denied any indebtedness to the defendants in attachment, and their answer was not traversed or any issue formed thereon. The defendants were, on the 10th day of April, 1886, upon proof of service by publication, defaulted, and a judgment rendered against them for $6034.77 and costs, and it was ordered that they "have execution therefor against the property attached herein." On the 26th day of April, 1886, and at the same term of court, Lewis May, the defendant in error, filed in the suit his interpleader, in which he alleged that the defendants in the attachment, on July 12, 1884, being insolvent, made an assignment to him, which "was made, executed and acknowledged under and in conformity to the laws of the State of New York relating to general assignments by debtors for the benefit of their creditors," which conveyed to him, "all and singular, their co-partnership and individual estate, real and personal, goods, chattels, effects, credits, choses in action, and property of every name and kind," in trust for the uses and purposes set forth in the deed of assignment. The interpleader further alleged, among other things, the deed of assignment was duly recorded in the recorder's office of Cook county, in the State of Illinois, on July 28, 1884, that plaintiffs in error had actual notice of said deed of assignment and of the terms and provisions thereof prior to the commencement of the attachment suit, and that all the lands levied upon and

the debts garnisheed were, by operation of said deed, conveyed and transferred to and vested in him, the said May, assignee, in trust. The interpleader also averred that all of the plaintiffs and defendants in attachment were, at the time of the assignment, and still are, residents of the State of New York, and that the real estate levied upon, and credits and effects attached and seized, were the property of him, said May, as assignee. The deed of assignment is referred to in and attached to the interpleader, and it shows preferred creditors to the extent of $425,000. The plaintiffs in error filed a demurrer to the interpleader on the 28th of June, 1886, and on the 7th of February, 1887, the demurrer was overruled, and it was ordered "that all property attached be and is hereby released, and all garnishees discharged." And on the 18th of February, 1887, a further order was made, directing the sheriff to forthwith return to the clerk of the court the special execution issued upon the judgment in attachment. The present writ of error questions the propriety of the proceedings of the Superior Court subsequent to the entry of the judgment for $6034.77, and the awarding of special execution thereon.

Section 29 of the Attachment act provides: "In all cases of attachment, any person, other than the defendant, claiming the property attached, may interplead, verifying his plea by affidavit, without giving bail; but the property attached shall not thereby be replevied, and the court shall immediately (unless good cause be shown by either party for a continuance) direct a jury to be impaneled, to inquire into the right of property." The interpleader thus provided for is a purely statutory remedy, and very different from the bill of interpleader of a court of equity, where the person asking the interpleading has no interest in the subject matter, and occupies the position of a mere stakeholder. At common law, also, there was an interpleader allowed, at his request, to a defendant in several suits brought for or in respect to the same thing, to ascertain who hath right to his action,—as, where two

brought several detinues for one thing, or one brought detinue and the other trover. (3 Jacobs' Law Dic. title "Interpleader.") In such cases the interpleading was between those who brought the respective suits, and, manifestly, there could, in the nature of things, be no judgments in the principal suits until the re- sult of the interpleading was known. So, at common law, to interplead was to discuss or try, before the principal cause could be determined, a point incidentally happening.

There is not, however, in the statutory interpleader the absolute necessity there is in the common law interpleader that it should be disposed of prior to the determination of the principal suit. The statute does not, in terms, provide it shall be tried, or even interposed, before judgment is entered upon the controversy between the plaintiff and the defendant in the attachment, but it is the usual and better practice to first settle the matter of the interpleader, and then render judgment upon the attachment; or, if such judgment has already been taken, to open it for the purpose of permitting the interpleader. But the statutory interpleader to try the title to the property seized upon attachment, without giving bail or security, is a substantial and valuable statutory right, and it tends to prevent multiplicity of suits, and the claimant of the property who asserts such right should not be deprived of it on a mere technical ground, and where there is no pressing necessity for so doing. Judgment may be taken at a very early day in a term of court against a defendant in attachment, either by default or upon his confession, and awarding a sale of the attached property; and it should not be left, in such case, a matter of judicial discretion whether or not the claimant of such property should be allowed the right given him by the statute. The statute contemplates a speedy trial upon an interpleader, and yet it gives to either party a right of continuance for good cause shown. Cases may frequently arise where the plaintiff will be entitled to a personal judgment and general execution against the defendant, or where only a portion of the attached

property is claimed by the interpleader, or both, and where it would be a great hardship and wrong to compel the plaintiff to postpone, and perhaps eventually lose, all benefits he might derive from a general *fi. fa.*, and forego until a future and uncertain day the use and benefit of the proceeds of the attached property not claimed by a third person, or else abandon all claim upon that portion of such property which is so claimed.

There is no legal inconsistency and incongruity that the court should render judgment against an attachment defendant, and order a sale of the property levied upon by the writ, and at a subsequent time or term adjudge such property to belong to a person other than such defendant, and order its release. Such other person would not be bound by the judgment against the defendant in attachment ordering such sale, and would stand in the attitude of a stranger to the record. In *Samuel* v. *Agnew, Sheriff, etc.* 80 Ill. 553, the goods and chattels had been levied upon both by the attachment writ and by a special execution issued on the judgment in the suit, and it was held that a person whose goods had been improperly seized under a writ of attachment, and who was not a defendant to the attachment suit, was not concluded by the judgment in the attachment, and might replevy the same from the officer at any time while they remained in his possession, and even after the rendition of such judgment and the levy of the special execution based thereon. In the case before us, defendant in error did not intervene in the attachment suit until sixteen days after the judgment against the defendant in attachment, and even if he had filed his interpleader before such judgment, that act would not have made him a party to the controversy between the plaintiffs and defendants in the attachment or to the judgment therein,—at least, not to the extent he would be bound and estopped by the result reached in regard to the matters involved only in such controversy.

The statute giving the remedy by interpleader is applicable alike to lands and to personal property. (*Williams* v. *Van-*

*Meter*, 19 Ill. 293; *City Ins. Co.* v. *Commercial Bank*, 68 id.
351.) Where the property attached is personal property, a
person, other than the defendant, claiming it, has a remedy
either by replevin or by interpleader; but where the subject
of the levy is real estate, of course replevin does not lie. We
think that, in analogy to replevin in respect to personal prop-
erty, which lies after judgment rendered against the defend-
ant in attachment awarding sale, the remedy by interpleader
should be held to lie, in respect to both personal and real prop-
erty, after such judgment, but that, in the nature of things
and from the necessity of the case, it would have to be inter-
posed while the attachment suit was still *in fieri*, which would
be during or before the term at which final judgment is entered
against the defendant in the attachment.

We do not regard the suggestion of counsel, that the attach-
ment lien was merged in the judgment lien, as of material
importance. It is only the judgment lien, and not the attach-
ment lien, that can be enforced against the property attached,
but we understand that the latter not only remains still ef-
fectual for the purpose of preserving a priority of lien, but that
it may be referred to for purposes of identification. The issue,
and only issue, there can be upon the interpleader, is upon the
affirmative claim of property alleged therein, and when that
is decided in favor of the claimant, the court has ample power
to see that its own process is not abused by making it the
means of selling his property to pay the indebtedness of an-
other for which he is not legally liable. It is fundamental,
that no person shall be deprived of property without due pro-
cess of law, and the court can protect the claimant in the rights
of property guaranteed him, without assuming to vacate or
change the judgment rendered at a prior term against the de-
fendant in attachment.

Our conclusion, then, is, that the interpleader in this case
was presented in apt time, and it is immaterial that the final
judgment of the court thereon was not rendered until a sub-

sequent term of the court. Besides this, even if plaintiffs in error had a right to object to the interpleader on the ground it was filed after the rendition of the judgment in attachment, yet they must be considered as having waived that right. The proper course for them to have pursued, in order to raise that question, was to move to strike the interpleader from the files. But they did not do this. They recognized it as a legitimate pleading, interposed in apt time, by demurring to it, and thereby waiving all objection that it came too late, and submitted to the court the merits of the controversy it sought to raise upon an issue of law as to the legal sufficiency of the matter alleged in the plea. This must be regarded as an election to waive any claim such as is here made.

The important and controlling questions that arise in passing upon the sufficiency of the claim of property set forth in the interpleader do not require any discussion on our part, as they were fully settled by the decision of the court in *May* v. *First Nat. Bank*, 122 Ill. 551, where the title of this same assignee, and under the same deed of assignment, was under consideration. It was there held, that a voluntary assignment made in another State by a non-resident debtor, executed in conformity with our laws in respect to the conveyance of property, but which is inconsistent, in substantial respects, with our statute relating to assignments, will not be enforced here to the detriment of our citizens, but that for all other purposes, if the assignment is valid by the *lex loci*, it will be carried fully into effect. Also, that the provision of our statute prohibiting all preferences in assignments by debtors, applies only to those made in this State, and not to those made in other States ; and that non-resident debtors may execute voluntary assignments, with or without preferences, as they may see fit, so long as creditors in this State are not injuriously affected thereby. See, also, *Lipman* v. *Link*, 20 App. Ct. 359.

It is urged that the interplea simply makes the bald assertion the deed of assignment was made in conformity with the

laws of New York, and that such allegation is only a conclusion of law, and that it does not set forth, either literally or in substance, the statutory provisions of New York, to show that under the law of that State a deed of assignment with preferences is valid. The interpleader does not purport to base the right of property in defendant in error upon a statute of New York, but upon a deed of assignment sufficient, under our law, to convey and transfer the property. In the absence of any allegation or proof of a statute, we must presume either that the common law obtains in New York, or else that the laws of that State are similar to the laws which prevail in this State, where the action was tried. If we assume the presumption first suggested, then it is sufficient to say, that in *Cooper* v. *McClun*, 16 Ill. 435, and in *Howell* v. *Edgar*, 3 Scam. 417, this court held, that, by the common law, a failing debtor, in making an assignment, has a right to prefer one creditor over another, when he does so in good faith. If, on the other hand, we assume the law of New York to be like our own, then the provisions for the payment of some debts and liabilities in preference to others, are void, and the assignment stands as a conveyance of property for the benefit, *pro rata*, of all the creditors.

It is finally insisted, that in any event the order dismissing the garnishees was erroneous. At the submission of the case to this court, the garnishees who were discharged were not brought before the court by the service of process, and they have not voluntarily submitted to the jurisdiction of the court, and we must therefore decline to pass upon the question of the legality of their discharge and the propriety of the order dismissing them out of court.

We find no error in the orders overruling the demurrer to the interpleader, and releasing the real estate that had been attached, and directing the sheriff to return the special execution, and they are affirmed.

*Order affirmed.*