## H. L. Whithed, Assignee, v. J. Walter Thompson Co.

1. VOLUNTARY ASSIGNMENTS—*Consideration For.*—The debts due to the creditors, and the acceptance of the trust to administer the estate for their benefit, are a sufficient consideration for an assignment.

2. SAME—*How the Assignee Takes.*—The assignee takes his title for the payment of the debts, subject to all equities, liens and incumbrances which existed against the property in the hands of the insolvent.

3. SAME—*Prior to the Statute.*—The right and power of a failing debtor to pass the title of his effects to an assignee remain as they did before the statute, but the power to control the distribution and beneficial employment of his property upon a transfer of the title is essentially different. Then the County Court had nothing whatever to do

Whithed v. J. Walter Thompson Co.

with the assignee or the effects in his hands as such assignee; now the effects of the assignor must in all cases be distributed ratably among his creditors, and any provisions in the deed of assignment directing otherwise will be inoperative and void.

4.  SAME—*As Affected by the Statute.*—The statute restricts to some extent the common law right, but does not undertake to affect the validity of a common law assignment except as to preferences; nor does it undertake to control or direct its administration, when such assignment is made in a foreign jurisdiction.  For all purposes except to the detriment of our own citizens, it is not regarded as contrary to the policy of our law to give such assignments effect here.

5.  SAME—*At Common Law.*—Assignments for the payment of debts to creditors were valid at common law, and the right to make an assignment for the benefit of creditors, exists independently of the statute.

6.  SAME—*By Citizens of Other States.*—A deed of assignment made by a citizen of another State, within such foreign jurisdiction, is subject to the claims of resident creditors when the property is located here.

7.  SAME—*Executed in Foreign States.*— A voluntary assignment made abroad, inconsistent in substantial respects with our statute, should not be put in execution here, to the detriment of our citizens, but for all other purposes, if valid by the *lex loci*, it should be carried fully into effect.

8.  COMMON LAW ASSIGNMENTS—*Made in Foreign States.*—A common law assignment for the benefit of creditors, made in a foreign State, will be presumed in this State to have been valid where made until the contrary appears.  The burden is upon him who questions its validity in the State where it was made, to prove his contention.

9.  CORPORATIONS—*Power to Make Assignments.*—Corporations,unless restricted by their charters or by general statutes, may make assignments for the benefit of creditors to the same extent that individuals may.

**Bill of Interpleader.**—Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1898.  Reversed but not remanded.  Opinion filed December 5, 1899.

**Statement.**—This was a bill of interpleader, filed by the Morgan Storage and Warehouse Company against appellant, appellee and others, to determine the ownership of certain property in the hands of the Warehouse Company, which is claimed by appellant, as assignee of the North Dakota Milling Co., a Dakota corporation, and by appellee, a New Jersey corporation, as creditor of said Milling Company, by virtue of a writ of attachment which it caused to be levied thereon.  By an interlocutory decree, the complainant was

dismissed out of the case, and appellant and appellee were required to interplead and set up their respective claims to the property, or rather to the proceeds in the hands of the clerk of court arising from its sale, which had been ordered on petition of all the defendants. The attachment suit was by stipulation dismissed, the rights of the appellee to be adjusted in this proceeding.

It appears that April 16, 1897, the North Dakota Milling Company loaded the property in controversy, known as cream of wheat, upon a car consigned to certain parties in New York, who are now out of the case, and received from the agent of the railroad company a bill of lading in which the Milling Company was named as consignor. Three days thereafter the said North Dakota Milling Company voluntarily executed a common law deed of assignment, conveying to appellant as assignee, for the benefit of all its creditors, all its property of every name and nature, without preference. Appellant accepted the trust, and, as required by the deed of assignment, executed and delivered a bond for the sum of $25,000, running to the judge of the District Court of the First Judicial District of North Dakota, conditioned for the faithful discharge of the trust. He at once took possession of all the assets of the insolvent company, and proceeded to administer the estate. Among other assets received by him was the bill of lading covering the carload of cream of wheat shipped by the assignor three days before. He forthwith forwarded said bill of lading, with two drafts of $500 each attached, to the consignee named in said bill of lading. But the drafts being returned to him dishonored, appellant at once caused the carload of cream of wheat to be stopped in transit. It was found at or near Englewood in this State, and on or about May 10, 1897, appellant ordered it placed in storage with the Morgan Storage and Warehouse Company. Early in May appellant directed the Warehouse Company to ship ten cases of the cream of wheat to a customer at Buffalo, N. Y., which was done, and shortly after appellant paid the storage charges to the Warehouse Company, and demanded the

remainder of the property. This demand was not complied with, apparently because a similar demand was made about the same time by the New York consignees, who had refused payment of the drafts accompanying the bill of lading. Matters remained in this situation until July 29th following, when the appellee instituted its suit in attachment, and thereupon the bill of interpleader was filed. The Circuit Court entered a decree sustaining the attachment, dismissing appellant's interplea, and ordering the money in the hands of the clerk paid to appellee.

WILBER, ELDRIDGE & ALDEN, attorneys for appellant.

LOUIS J. PIERSON, attorney for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

There is no dispute as to the material facts. It is said by appellee's counsel that prior to the levy appellant had renounced all claim to the goods. But the demand upon the Warehouse Company by appellant, and the threat that unless the property was delivered to him he would hold the Warehouse Company for conversion thereof, will not admit of any such construction.

We can not agree with appellee's counsel that the delivery of the bill of lading to appellant with the other assets pursuant to the deed of assignment, did not operate as a transfer of the assignor's interest in the property therein described. Lewis v. Springville Banking Co., 166 Ill. 311. But it is needless to extend the discussion of such proposition, because the assignment deed expressly conveyed all claims, demands, property and effects of the assignor wherever situated. The shipper and its assignee were, and remained, entitled to reclaim the property described in the bill of lading, if the consignees refused, as they appear to have done, to comply with the terms of the contract in pursuance of which the shipment to them was made. The assignee did so reclaim the property. By his order it was stopped *in transitu*, having been found within the limits of this State. It was delivered on his order to the Warehouse Company, and the

latter thereafter held it as his agent. This agency was abundantly recognized when said company delivered a part of the property on the assignee's order for shipment to a firm in Buffalo, New York; and it was undisputed by the agent, until by reason of conflicting claims, the Warehouse Company became apparently uncertain as to its duties and liabilities, resulting in the filing of its bill of interpleader. The possession of the agent—the Warehouse Company—was the possession of the appellant.

It is urged on behalf of appellee that the latter had the right to seize the property under its writ of attachment, notwithstanding it was thus in possession of the assignee, because, as it is contended, the assignment is invalid. It is urged that the deed of assignment was without consideration; that appellee as a creditor never assented; that the assignee's title is subject to appellee's equity; that the courts of this State no longer recognize common law assignments, and that the assignment in this case was invalid in the State of North Dakota, where it was made.

As the decree of the Circuit Court must be reversed, we will consider briefly these various propositions.

The debts due to the creditors, and the acceptance of the trust to administer the estate for their benefit are a sufficient consideration for an assignment. Hudson v. Maze, 3 Scam. 578; Halsey v. Whitney, 4 Mason (U. S.), 214; Lawrence v. Davis, 3 McLean (U. S.), 177.

It is not at all necessary that appellee as a creditor should have assented to the assignment in order to make it valid against said creditor. It is not questioned that the assignment was made in good faith for the benefit of the creditors, and that the assignee is executing it in accordance with the spirit and purpose of the deed. It is true, the assignee takes his title for the payment of the debts, and subject to all equities, liens and incumbrances which existed against the property in the hands of the insolvent. Jack v. Weiennett, 115 Ill. 105–11. Appellee's claim against the insolvent, however, was not a lien or incumbrance upon the property assigned.

It is not accurate to say that the courts of Illinois no longer recognize common law assignments, and we find no warrant for the suggestion that a foreign assignment can not be regarded here as valid, unless administered under our statute. In Hanchett v. Waterbury, 115 Ill. 220–224, there is a clear statement of the effect of the statute of this State regulating assignments. It is there said:

" It is true that the right and power of a failing debtor to pass the title of his effects to an assignee remain as they did before the statute, but this is all. The power to control the distribution and beneficial enjoyment of his property upon such a transfer of the title is essentially different from what it was before the statute. Prior to its adoption the insolvent debtor could distribute his property among his creditors just as he pleased. * * * Then the County Court had nothing whatever to do with the assignee or the effects in his hands as such assignee. Such is not the case now. * * * The effects of the assignor must in all cases be distributed ratably among his creditors, and any provisions in the deed of assignment directing otherwise will be inoperative and void."

The title to the property assigned still passes in this State by the voluntary act of the debtor as by a common law assignment. But when the assignment is made the statute of Illinois steps in and controls the distribution of the assets. In Union Trust Co. v. Trumbull, 137 Ill. 146 (on p. 158), it is said : " Assignments for the payment of debts to creditors were valid at common law; " and it is further said that the statute of Illinois does not assume to create a right, but merely assumes to modify and regulate an existing right, "in other words, modifies and regulates existing common law rights." Such common law right to make an assignment for the benefit of creditors " exists independently of the statute." Howe v. Warren, 154 Ill. 227 (page 243). It can not be said, therefore, that common law assignments are not still recognized by the courts of this State.

The statute restricts to some extent the common law right, but does not undertake to affect the validity of a common law assignment except as to preferences; nor does it undertake to control or direct its administration, when such

assignment is made in a foreign jurisdiction. It does not undertake to prevent our courts from recognizing the validity of such foreign assignment, nor prevent the assignee thereunder from coming into our courts to enforce his rights as fully and freely as other non-residents. For all purposes except to the detriment of our own citizens, it is not regarded as contrary to the policy of our law to give such assignments effect here. May v. First Natl. Bank, 122 Ill. 551.

Nor do we find anything in those provisions of the statutes of North Dakota, introduced in evidence, which tends to sustain the claim of appellee's counsel that the assignment is invalid under the laws of that State. There is evidence tending to show there is a provision of the law of that State in force when this assignment was made which expressly provides that any transfer of property made in good faith for the purpose of paying or securing a *bona fide* indebtedness shall be valid. A common law assignment for the benefit of creditors made in a foreign State will be presumed in this State to have been valid where made, until the contrary appears. The burden is undoubtedly upon him who questions its validity in the State where it was made to prove his contention. This has not been done in this case, nor does it appear that the assignment in controversy has ever been questioned in North Dakota. There is affirmative evidence of its validity there. A lawyer of that State, called as an expert witness, states it as his opinion that a voluntary common law assignment of an insolvent corporation does not conflict with any provision of the laws of North Dakota. There is no testimony to the contrary, and we are not referred to any decisions of the courts of that State sustaining appellee's contention in that regard.

Appellee sets forth in his answer to an amended interplea certain alleged provisions of the North Dakota code, which provide, not for a voluntary assignment, but for proceedings in the nature of bankruptcy, where a person owing debts desires to obtain a discharge therefrom. The assignment is not made by the debtor, but by the clerk of court

to an assignee selected by the creditors. The filing of the petition in the District Court is apparently the only voluntary act required of the debtor. Such a proceeding is a statutory as distinguished from a voluntary assignment. Townsend v. Coxe, 151 Ill. 62.

It does not purport, so far as the extracts from the Dakota statute referred to in the abstract show, to exclude voluntary common law assignments. The provision of another North Dakota statute, that the rule of the common law that statutes in derogation thereof shall be strictly construed, has no application to the code of that State, but that provisions of the latter are to be liberally construed respecting the subjects to which it relates, we do not regard as prohibiting or interfering with the common law right of assignment in that State, so far as appears from anything in the record before us.

The deed of assignment in the case at bar is sufficient under our law to convey and transfer the property now in controversy. It has been held that under such circumstances, in the absence of any allegation or proof of a statute to the contrary, we must presume either that the common law obtains in the foreign State where the assignment is made, or else that the laws of that State are similar to those which prevail in this State, where the action is tried. In either case this foreign assignment would be treated as valid. Juilliard v. May, 130 Ill. 87 (p. 97).

The rule has been adopted in this State that " Corporations, unless restricted by their charters or by general statutes, may make assignments for the benefit of creditors to the same extent that individuals may." Blair v. Illinois Steel Co., 159 Ill. 350 (p. 364). The right to make such assignment exists inherently in all corporations unless specially forbidden. Vanderpool v. Gorman, 140 N. Y. 563.

It remains to consider the rights of appellee as an attaching creditor seizing personal property, which, when taken under the writ, was temporarily in this State in the possession of a non-resident assignee under a valid foreign assignment. The attaching creditor in this case is a New Jersey

corporation.    Both appellant and appellee are therefore non-residents.

It is the doctrine in this State that a deed of assignment, made by a citizen of another State within such foreign jurisdiction, is subject to the claims of resident creditors when the property is located here; that it is not just or fair to compel creditors in this State to go to a foreign State to receive a *pro rata* share of the debtor's property when they may have extended credit alone upon the faith of the property in this State.    Heyer v. Alexander, 108 Ill. 385.    That case is distinguished from C., M. & St. P. Ry. Co. v. Keokuk Northern Line Packet Co., 108 Ill. 317, on the ground that in the latter case the property was personalty, which passed by delivery, and was situated in Missouri, where the receiver was appointed; that the title vested in the latter by appointment, and the property was brought temporarily into this State without any intention of its remaining permanently, while in the Heyer case the property was permanently located in this State, and was here when the assignment was made.    In Rhawn v. Pearce, 110 Ill. 330, it was held that trustees of an insolvent estate, appointed under a Pennsylvania statute, could not, as such trustees, hold property in this State, as against residents of that State who had brought their action here by attachment and garnisheed the fund. A distinction is made between voluntary assignments and assignments by operation of law.

In May v. First National Bank, 122 Ill. 551, the inquiry was, as in the case at bar, whether a voluntary assignment by a non-resident, of property in Illinois, for the benefit of creditors is valid as against creditors who do not reside in this State or that of the assignor.    It is there said that it is a misapprehension to suppose that Rhawn v. Pearce is an authority to the effect that a voluntary assignment, made without the State, of property situated in this State, will be held to be invalid, as well against foreign as against domestic creditors attaching the property here.

The conclusion reached in the May case is thus stated : " We do not see that there is any policy of law    *    *    * why non-residents are not left free to execute voluntary

assignments with or without preferences among foreign creditors as they may see fit, so long as domestic creditors are not affected thereby, without objection lying to such assignments that they are against the policy of our law."

Concurrence is expressed in the rule announced in Bentley v. Whittemore, 19 N. J. Equity, 462, as follows:

" The true rule of law and public policy is this: That a voluntary assignment made abroad, inconsistent, in substantial respects, with our statute, should not be put in execution here, to *the detriment of our citizens*, but that for all other purposes, if valid by the *lex loci*, it should be carried fully into effect."

In Woodward v. Brooks, 128 Ill. 222, a voluntary assignment for benefit of creditors, without preference, valid apparently under the law of Pennsylvania, where made, is held valid here; and in the absence of claims of domestic creditors it is said that the assignee may reduce to his possession the property assigned to him within this State, and the assignment will be given effect by the courts of this State as against citizens of Pennsylvania bringing attachment suits here. It is said this rule is not in conflict with Rhawn v. Pearce (*supra*), as the assignment involved was not a *statutory* assignment. The latter will not be enforced against attaching creditors, even of another State. In Juilliard v. May, 130 Ill. 87, it was again held that " non-resident debtors may execute *voluntary* assignments with or without preferences as they may see fit, so long as *creditors in this State* are not injuriously affected thereby." To the same effect is Townsend v. Coxe, 151 Ill. 62.

The assignment in the case at bar accords with the policy of the Illinois statute requiring the effects of the assignor to be distributed ratably among the creditors of the insolvent without preference. But if it did not, it might still be enforced as against foreign creditors attaching the property here.

Appellee had not complied with the laws of Illinois in reference to foreign corporations doing business in this State at the time the attachment suit was instituted. Being a New Jersey corporation, and not a citizen of this

State, it can not be regarded as, nor given the rights of, a domestic creditor, as against the foreign assignee.

It might, perhaps, be doubted whether the property attached, having been brought temporarily into this State after its transfer to the assignee, and in his possession for a considerable period, was subject to attachment even by domestic creditors, under the rule as announced in Heyer v. Alexander (*supra*).  Such creditors could not claim to have extended credit to the insolvent in another State upon the faith of the property coming temporarily into, or passing through, this State after the assignment was made. Whether, the reason failing, the rule would also fail, we need not decide.  The case of C., M. & St. P. Ry. Co. v. Keokuk Northern Line Packet Co. (*supra*) contains expressions which may seem to leave it an open question.

There can be no doubt, however, as to the superior right of the assignee in this case, as against the non-resident attaching creditor.

For the reasons indicated, the decree of the Circuit Court must be reversed, but the cause will not be remanded.