E. C. REICHWALD *et al.*

*v.*

THE COMMERCIAL HOTEL COMPANY *et al.*

*Filed at Ottawa May 10, 1883.*

1. CORPORATION—*ratification of acts of its officers—what so regarded.* Notes given by the president of a corporation formed under the laws of the State of Iowa, and mortgages given to secure the same, executed by the president and the secretary, under the corporate seal, which notes were entered upon the company's book of bills payable, and in its statement of liabilities posted yearly in Iowa, as required by law, though made without authority from the board of directors, are valid obligations when the directors afterwards authorize and approve a sale of property in satisfaction of the same. This action of the directors amounts to an adoption and ratification of the acts of the officers.

2. SAME—*powers of directors—construction given to the action of the stockholders.* Where, by the articles of an Iowa corporation, it was provided that the company should have "the right to purchase, sell, mortgage, control and lease hotel property, either real or personal, or both, and to exercise all such other incidental powers as shall be necessary in conducting said business" of keeping hotels, and also provided that the stockholders, at any annual meeting, might adopt such by-laws for the government of the board of directors, etc., as they might deem necessary, and the stockholders, at their first meeting, passed a resolution that they deemed it not necessary to adopt by-laws, for the reason that the articles of incorporation provided that the control and management of the corporation should be in the hands of the board of directors, which, at the next annual meeting, was re-adopted: *Held*, that such resolution amounted to an expression of the stockholders to leave the entire control and management of the corporate business with the directory, the same as the stockholders themselves might do.

3. SAME—*right to assume liabilities incurred before organization.* Corporations may, by express agreement, assume obligations entered into by its promoters prior to its organization, with a view thereto, where the corporation receives the benefit of that in respect of which such obligations were incurred.

4. SAME—*consideration for its obligation given to discharge a prior incumbrance on property received on subscription to stock.* A hotel company was organized with a capital stock of $160,000, which was all subscribed by one of the corporators, except three shares, of $100, none of which was ever paid. At the time of the organization of the corporation the principal stockholder, who was elected president, was the owner of a large amount of

hotel furniture, subject to a chattel mortgage of $115,000, which he turned over to the company in payment of his subscription, in pursuance of an arrangement made prior to the organization, and the company, in pursuance of the same arrangement, gave its notes, secured by chattel mortgage on the same property, to release it from the prior incumbrances, and such property constituted the sole assets of the company. It was *held,* that so far as the hotel company was concerned it received a full consideration for the notes and mortgage so given, and that they were valid obligations.

5. SAME—*powers of corporations organized under the laws of Iowa.* A corporation formed under the laws of Iowa has the power to make contracts and acquire and transfer property, the same as a natural person, and unless prohibited may borrow money, execute a mortgage on the corporate property, and contract in respect thereto, the same as an individual may do.

6. SAME—*powers outside the place of its creation.* A corporation can not perform acts outside of the State under which it is created, which are strictly corporate acts, but may perform other acts not corporate acts in the strict sense of those words.

7. SAME—*what are "corporate acts," as distinguished from acts of agents.* The courts differ as to what are corporate acts and what are acts merely of agents, some holding that the directors are only agents, and others holding their acts to be corporate acts. The acts of an Iowa corporation in acquiring property in this State, and in giving notes and mortgages for that purpose, and in selling all its corporate property in this State to discharge and satisfy such notes and mortgages, are not corporate acts, but such as may be done by the directors in the exercise of their powers as agents of the corporation, and are such as may be well performed in this State.

8. SAME—*right of corporation to turn out property to pay debts—and to prefer creditors.* A corporation, like a private individual, independent of any positive law to the contrary, may turn out a part or the whole of its property in payment of its debts, and in doing so may prefer creditors, if done in good faith and not for a fraudulent purpose.

9. SAME—*disposal of entire property—will not work a dissolution.* The disposal of all the property of a corporation will not operate to end or dissolve the corporation.

10. SAME—*securing debt to stockholder in exclusion of others not fraudulent.* The fact that one is a stockholder in a corporation does not debar him from obtaining security for debts due to himself from the corporation, to the exclusion of other creditors.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

In the month of April, 1876, the Commercial Hotel Company was organized as a corporation, under the laws of the State of Iowa, to transact the business of keeping hotels at any places or place in the States of Iowa and Illinois, or either of them, with a capital stock of $160,000, divided into 1600 shares, of $100 each.    Pulling subscribed for 1597 shares, Cronkhite for one share, Platner for one, and White for one.    The officers of the corporation were, Pulling, president, Cronkhite, vice-president, and Platner, secretary and treasurer.    For some time previous, Pulling had been carrying on the Commercial Hotel, in Chicago, for the furniture and fixtures of which Ingraham had made advances of money to the amount of about $115,000, for which, and to secure which, Pulling had given his notes to Ingraham, and a chattel mortgage upon said hotel property, the mortgage not being recorded.    Cronkhite made a purchase of one Hale of a building in Chicago, for certain property and $20,000, which building, by direction of Cronkhite, Hale conveyed to Ingraham, and on March 15, 1876, a written agreement was entered into between Cronkhite and Pulling of the one part, and Ingraham of the other part, whereby it was agreed that the Hale building conveyed to Ingraham should be held by the latter as security for the sum of $100,000, and as further security therefor there was to be given $20,000 of the stock of the Commercial Hotel Company, when it should thereafter issue. This arranged for $100,000 of the indebtedness of Pulling to Ingraham on account of the hotel property.    Upon the organization of the Commercial Hotel Company, Pulling transferred to the corporation the said furniture and fixtures of the Commercial Hotel, in Chicago, which he had previously been keeping, in full payment of his subscription for 1597 shares of stock,—$159,700.    Cronkhite's subscription of one share, Platner's of one share, and White's of one share, were all paid for in services to be rendered.    For the $20,000, part purchase money for the Hale building, due from Cronkhite to

Hale, the company, after its organization, and on May 12, 1876, gave its notes to Hale, and a chattel mortgage to secure their payment on said hotel furniture and fixtures. It also gave its notes to Ingraham for $14,780.56, to cover the balance over $100,000 of the indebtedness to him of Pulling for the hotel property. The Hale chattel mortgage was subsequently sold and assigned to Lyon, and sundry payments, mostly from advances made by Ingraham, were made from time to time upon the mortgage.

On May 11, 1878, the hotel company executed new notes for $25,000, in renewal of the Hale chattel mortgage assigned to Lyon, and interest, and for advances made by Ingraham, and secured the same by a new chattel mortgage on the hotel property, and took up the old paper and mortgage,— $15,000 of the new paper belonged to Lyon, and $10,000 to Ingraham. In September, 1878, the unsecured indebtedness of the hotel company to Ingraham, including the original notes of $14,780.56 aforementioned, was over $22,000, and, including the chattel mortgage indebtedness, the liabilities of the company to Ingraham and Lyon amounted to about $47,000. In the fall of 1878 possession was taken under the Lyon chattel mortgage, and a custodian placed in the hotel. Subsequently, and with the unanimous consent and approval of the board of directors, a settlement was made with Ingraham, and a bill of sale was executed to him of all the hotel property subject to the chattel mortgage, which he assumed and agreed to pay. At the time of this sale the hotel company was indebted to some thirty different persons for supplies and labor, aggregating the sum of $10,860.05. These claims were afterwards assigned to Reichwald and others, as trustees, and the hotel company executed to them its judgment note for that amount, upon which judgment was subsequently entered, and after return of an execution thereon unsatisfied, the bill in this case was filed by Reichwald and others in the Superior Court of Cook county, for the purpose

of having said sale decreed void as to them, and that Ingraham be required to account for all moneys that had come into his hands from the use of the hotel property. Upon final hearing, the Superior Court dismissed the bill. On appeal to the Appellate Court for the First District the decree was affirmed, and the complainants then appealed to this court.

Messrs. G. W. & J. T. KRETZINGER, and Mr. FRED L. BROOKS, for the appellants:

The power, and the exercise of the power, to acquire and sell or mortgage property, were expressly conferred upon the corporation, and could only be exercised by action and authority of its stockholders. Laws of Iowa, paragraph 6, sec. 1059; *Rawlins* v. *Clay,* 33 Maine, 139; *Railway Co.* v. *Allerton,* 18 Wall. 233.

The power to sell or mortgage property is a corporate power, and its exercise, whether by the stockholders or directors, is a corporate act, and can be performed only in the State of its creation, although an agent, when authorized, may sell or mortgage property out of the State.

Even if the power to sell had been conferred upon the board by express language, it could not sell the entire property, and thus destroy the corporation, without the assent of the stockholders. *Gashwilder* v. *Willis,* 33 Cal. 11; *Conro* v. *Port Henry Iron Co.* 12 Barb. 27; *State* v. *Ancker,* 2 Rich. 245; *Abbott* v. *American Hard Rubber Co.* 33 Barb. 591; Angell & Ames on Corp. secs. 499, 500; *Kean* v. *Johnson,* 1 Stockt. 401; *Bagshaw* v. *Easton Ry. Co.* 7 Hare, 114; *Bank of Commerce* v. *Bank of Brest,* Harr. (Mich.) 101.

Said mortgages and notes executed to Hale, Lyon and Ingraham by the officers, without authority from the stockholders or board of directors, were absolutely null and void. *U. N. F. Ins. Co.* v. *Keyser,* 32 N. H. 315; Angell & Ames on Corp. 242, 245, 258, 259; *Augusta Bank* v. *Hamlin et al.*

17 Mass. 180; *Gibson* v. *Goldthwaite,* 7 Ala. 293; *McCullough* v. *Mars,* 5 Denio, 575; *Livingston* v. *Lynch,* 4 Johns. Ch. 596.

The assumption of the debts by the hotel company, through its directors or officers, was without consideration, and wholly void.    *Bedford R. R. Co.* v. *Bowser,* 48 Pa. St. 29; *Conro* v. *Port Henry Iron Co.* 12 Barb. 27.

The payment of this debt with the property of the company was a breach of trust, in which Ingraham participated, which invalidates the sale.    *Conro* v. *Port Henry Iron Co.* 12 Barb. 27; *Barney* v. *Griffin,* 2 Cow. 365; *Green* v. *Winter,* 1 Johns. Ch. 27; *Brown* v. *Rickets,* 4 id. 303; *Salem Bank* v. *Gloucester Bank,* 17 Mass. 29; *Rahm* v. *Bridge Manufactory,* 16 Kan. 284; *State* v. *Commercial Bank of Manchester,* 5 S. & M. 237; *N. Y. and N. H. Ry. Co.* v. *Ketchum,* 27 Conn. 107.

Directors have no implied power to use the property of the corporation for any purpose not named in the charter.    They have no implied power to commit a fraud.    Cases *supra,* and *Broadhead* v. *City of Milwaukee,* 19 Wis. 658; *Brown* v. *Johnson,* 24 Me. 490; *Monument National Bank* v. *Globe Works,* 101 Mass. 107.

The assumption of promoters' debts by a corporation is void, and can not be enforced unless the corporation receives the benefit thereof, or a consideration therefor, and without receiving such benefit or consideration a promise to pay is void.    *Rockford, Rock Island and St. Louis R. R. Co.* v. *Sage,* 65 Ill. 329; *N. Y. and N. H. Ry. Co.* v. *Ketchum,* 27 Conn. 170; *Franklin Fire Ins. Co.* v. *Hart,* 31 Md. 59; *Safety Life Deposit Ins. Co.* v. *Smith,* 65 Ill. 309.

The pretended sale to Ingraham of the hotel property was a gross violation of a trust, and is absolutely null and void. *Upton, Assignee,* v. *Burnham,* 3 Biss. 431; *State* v. *Ferris,* 42 Conn. 560; *New Albany R. R. Co.* v. *McCormick,* 10 Ind. 499.

Irrespective of Ingraham's relation as stockholder, it was a violation of trust on the part of the directors to pay their debts with the company's property.    *Railroad Co.* v. *Howard,* 7 Wall. 409; *Mumma* v. *Potomac Co.* 8 Pet. 286; *Wood* v. *Drummer,* 3 Mason, 308; *Voss* v. *Grant,* 15 Mass. 522; *Spear* v. *Grant,* 16 id. 14; *Curran* v. *Arkansas,* 15 How. 387; *Goodwin* v. *C. and W. C. C. et al.* 18 Ohio St. 182.

Messrs. TENNEY, FLOWER & CRATTY, for the appellees:

The powers of this corporation are to be determined by the laws of Iowa, where it was organized, and its articles of association.    Under the laws of that State its powers are as broad as those of an individual, except when prohibited. Rev. Stat. Iowa, 1880, sec. 1059, sub. 6; *Thompson* v. *Lambert,* 44 Iowa, 239; *Merrick* v. *B. and W. Plank Road Co.* 11 id. 74; *Baker* v. *Johnson Co.* 33 id. 151.

Directors may meet outside of the State where corporation is organized.    *Bellows* v. *Todd,* 39 Iowa, 209.

A corporation may make itself liable for the acts and contracts of its promoters, when it receives the benefits arising therefrom.    Brice's Ultra Vires, (2d ed.) 675; *Low* v. *Railroad Co.* 46 N. H. 284; *Rockford, Rock Island and St. Louis R. R. Co.* v. *Sage,* 65 Ill. 332; *W., S. and M. Co.* v. *Cousley,* 72 id. 531; *Wood* v. *Whelen,* 93 id. 153.

A corporation which has had the benefit of an executed contract, can not claim that it was unauthorized.    *Peoria and Springfield R. R. Co.* v. *Thompson,* 103 Ill. 187.

Commercial, and apparently all private, corporations, may voluntarily alienate the whole of their tangible assets.    Brice's Ultra Vires, 130, 131; *Wilson* v. *Miers,* 10 C. B. (N. S.) 348. And this does not have the effect to end or dissolve the corporation,—it still remains a living and existing corporation. *Town* v. *Bank of River Raisin,* 2 Doug. (Mich.) 530; *Revere* v. *Boston Copper Co.* 15 Pick. 351; *Boston Glass Co.* v. *Langdon,* 24 id. 49; *State* v. *Bank of Maryland,* 1 Gill & J. 205;

*Catlin* v. *Eagle Bank,* 6 Conn. 233; *Sargent* v. *Webster,* 13 Metc. 497.

So long as a corporation retains control over its property, it may handle and dispose of it as an individual may do. It may make an assignment for the benefit of creditors, and may give a preference. Nor is a director or other official a trustee for the corporate creditors, or otherwise incapacitated from securing himself, if a creditor, to their disadvantage. *Cowles* v. *Ricketts,* 1 Iowa, 582; *Buell* v. *Buckingham & Co.* 16 id. 291; *Town* v. *Bank of River Raisin,* 2 Doug. (Mich.) 530; *State* v. *Bank of Maryland,* 6 Gill & J. 205; *Catlin* v. *Eagle Bank,* 6 Conn. 233; Green's Brice's Ultra Vires, p. 484, note b.; *Graham* v. *Railroad Co.* 102 U. S. 148.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is urged by appellants that the notes and mortgages executed to Hale, Lyon and Ingraham by the officers of the hotel company, were so executed without authority from the stockholders or board of directors, and were, therefore, void. It is sufficient to say in this respect, that the notes were executed by Pulling, as president of the company; that the mortgages were executed by him as president, and Platner as secretary, under the corporate seal of the company; that the notes were entered and appeared upon the bills payable book of the company, and in its statement of liabilities posted yearly in its Iowa office, as required by law; and that the resolution of the board of directors of October 8, 1878, authorizing and approving the sale of the listed property to Ingraham in satisfaction of the Lyon mortgage and the notes to Ingraham, assumes and recognizes such mortgage and notes as valid existing liabilities of the corporation. There was full adoption and ratification by the company of the notes and mortgages.

As against the validity of the bill of sale of the hotel property to Ingraham, executed on October 8, 1878, by Pulling,

as president, and Platner, as secretary, under the corporate seal of the company, in pursuance of the resolution of the board of directors expressly authorizing the sale, it is insisted that such a sale of the entire assets of the corporation, without the authority of the stockholders in meeting convened, was wholly void; that the authority which was conferred upon the board of directors by article 5 of the articles of incorporation, providing that "the business of this company shall be under the control and management of a board of directors," etc., extended only to the management of the ordinary business of the company involved in the keeping of hotels, and not to the making sale of the entire property of the company; that the making of such a sale was the exercise of a corporate power, which remained with the corporation, to be exercised by it through its stockholders. By the articles of incorporation it is expressly provided that the company shall have "the right to purchase, sell, mortgage, control and lease hotel property, either real or personal, or both, and to exercise all such other incidental powers as shall be necessary and proper in conducting said business" of keeping hotels. The 7th article provides: "At the annual meeting of the stockholders on the second Wednesday in April, 1877, or at any subsequent annual meeting, they may adopt such by-laws and rules and regulations applicable to this company, and for the government of the board of directors in the control and management thereof, as shall be deemed necessary, and not inconsistent with these articles," etc. No by-laws were ever adopted, but at the annual meeting of stockholders on the second Wednesday of April, 1877, the following resolution was passed: "*Resolved*, that it is not deemed necessary at this meeting to adopt by-laws, for the reason that the articles of incorporation provide that the control and management of the corporation shall be in the hands of the board of directors." And at the annual meeting of stockholders in April, 1878, the same resolution was

re-adopted.    We think it but the proper construction of this resolution to consider it as manifesting the intention, and amounting to an expression of the sense, of the stockholders, that the entire control and management of the corporate business should be entrusted to the board of directors; that they should have the right to purchase, mortgage or sell the hotel property, in their discretion, and have full power and authority to do anything in that respect that the stockholders themselves or the corporation could do.

Question is made by appellants' counsel of the validity of the notes given by the hotel company to Hale and to Ingraham, on account of Pulling's preëxisting indebtedness to Ingraham before the formation of the corporation, in the respect of there being no consideration of benefit to the company for such notes.    It is well enough settled that corporations may, by express agreement, assume obligations entered into by the promoters of the corporation prior to its organization, with a view thereto, where the corporation derives the benefit of that in respect of which such obligations were incurred.    *Wood* v. *Whelen*, 93 Ill. 153; *Railroad Co.* v. *Sage*, 65 id. 332.    And see *Low* v. *Railroad Co.* 46 N. H. 284.

But it is denied that the liabilities on account of which the notes in question were given were incurred by Pulling and Cronkhite as promoters, or that the hotel company received the benefit of that for which the liabilities were incurred. The idea would seem to be, that as full paid stock was issued to Pulling for the hotel furniture he put in, this was payment by the company of full consideration for the furniture, and that the superadded agreement to pay the personal debts of Pulling and Cronkhite was gratuitous, and without any consideration received by the hotel company.    It is true the liability of Pulling to Ingraham was not strictly incurred as promoter of the corporation, or in view of its organization, but that of Cronkhite to Hale clearly was thus incurred. Pulling and Cronkhite, who were the only promoters of the

enterprise, devised the scheme to organize the "Commercial Hotel Company" under the Iowa corporation law, and to bring into that corporation, as capital stock, the hotel furniture and fixtures of the Commercial Hotel, in Chicago, which Pulling was carrying on, and issue full paid stock therefor. To that end, in order to get control of the furniture and fixtures, divested of the lien which Ingraham had thereon, it was necessary to make some satisfactory arrangement with Ingraham.   This was done through Cronkhite making a trade with Hale for the Hale building, Cronkhite giving therefor other property he owned and $20,000, and Ingraham being willing to take the notes of Pulling and Cronkhite for $100,000 of Pulling's indebtedness to him, secured by a conveyance to him of the Hale building and $20,000 of hotel company stock when it should thereafter issue, and for the remaining $14,-780.56 due to him from Pulling, Ingraham was to have the hotel company notes.   Soon after the organization of the corporation the company's notes were given to Hale for the $20,000, the balance of the purchase money coming from Cronkhite for the Hale building, and a chattel mortgage to secure the payment of the same, and the company's notes were given to Ingraham for the remaining $14,780.56 due him from Pulling.   Pulling and Cronkhite were two of the three directors, and as appears from the books of the corporation, shortly after the organization, they were substantially the only stockholders.

We must believe, from the circumstances, that these notes and chattel mortgage of the company were given in pursuance of an arrangement, made prior to the organization, that they should be thus given.   Not a dollar in money was subscribed for or paid in by any one.   All the debts thus assumed by the company for which they gave their notes and chattel mortgage, as above named, were really for the property, which constituted the sole assets of the corporation, and which property, we may well suppose, could not have other-

wise been obtained.    We can have no doubt that such notes and chattel mortgage were given for full consideration received by the hotel company, and so far as respects sufficiency of consideration, were valid and binding obligations upon the company.    They were, then, the company's own debts, and not the mere personal debts of Pulling and Cronkhite, as is so strenuously urged.    As to the remainder of the amount of the indebtedness from the hotel company to Ingraham, which was settled for and satisfied by the bill of sale to Ingraham, there is no question as to its being the company's own indebtedness, being for moneys advanced by Ingraham directly to the corporation after its organization.    Among the powers of a corporation organized under the laws of Iowa, conferred by the laws of that State, is "the right to make contracts, acquire and transfer property, possessing the same powers in such respects as private individuals."    (Code of Iowa, 1880, sec. 1059, sub. 6.)    That, unless prohibited, it may borrow money and execute a mortgage on the corporate property, and may make a contract the same as an individual can do, see *Thompson* v. *Lambert*, 44 Iowa, 239; *Buell* v. *Buckingham & Co.* 16 id. 291.

Objection is taken to the action of the directors in the premises as being outside of the State of Iowa, and in the State of Illinois, it being claimed that what they did were corporate acts, and that corporate acts can not be performed outside the territory of the jurisdiction under which the corporation was created.    This is true as to corporate acts, strictly so called.    And courts differ as to what are corporate acts, and what are acts merely of agents, some holding that the directors are only agents, and others holding their acts as directors to be corporate acts.    (Green's Brice's Ultra Vires, 442–3, note a.)    All the acts in question of the directors we look upon as being not corporate acts, but acts done by the directors in the exercise of their power as agents of the corporation, and such as might well be performed within

this State, although the corporation was created in the State of Iowa.   There is abundant authority in favor of such view. *Bellows* v. *Todd*, 39 Iowa, 209; *Galveston Railroad* v. *Cowdrey*, 11 Wall. 476; *Arms* v. *Conant*, 36 Vt. 745; *Miller* v. *Ewer*, 27 Me. 517; *Ohio and Mississippi R. R.* v. *McPherson*, 35 Mo. 13.   Although it may be otherwise as to corporate acts, it is not to be questioned that a corporation, by its agents, may make contracts and transact business in another State than that of its creation,—and the expressed object of this corporation, by its articles of incorporation, was the management, control and keeping hotels in the State of Illinois, as well as in the State of Iowa.

We do not concur in appellants' view that the debts in question were the mere private debts of Pulling, and that the transfer to Ingraham was a misappropriation of the company's property to the payment of Pulling's individual indebtedness.   We find it to be the indebtedness of the company, and that the transfer of the property was but the payment of the company's *bona fide* indebtedness.   An individual may turn out part or the whole of his property in payment of his debts, and in so doing may prefer creditors.   We do not see why this corporation might not do the same, and that through the action of its board of directors.   We find nothing to impeach the good faith of the transaction.   Kent lays it down: "Independent of positive law, all corporations have the absolute *jus disponendi* of lands and chattels, neither limited as to objects nor circumscribed as to quantity."   (2 Kent's Com. 281.)   In addition, here, the law of the State where the corporation was created conferred upon it the right to make contracts, acquire and transfer property, with the same powers in such respects as private individuals.

But it is claimed that the board of directors had not the power to dispose of all its property, and thus destroy the corporation.   The effect of this transfer of all the hotel property no doubt was to terminate the business of the corpora-

tion; but that was not the necessary effect. It is entirely clear, upon the authorities, that the disposal of all the property of a corporation has not the effect to end or dissolve the corporation. *Buell* v. *Buckingham & Co.* 16 Iowa, 284; *Town* v. *Bank of River Raisin,* 2 Doug. (Mich.) 530; *State* v. *Bank of Maryland,* 6 Gill & J. 205; *Catlin* v. *Eagle Bank,* 6 Conn. 233.

The circumstance of Ingraham being a stockholder in the corporation, as he appears to have been, did not debar him from obtaining security for debts due to himself, to the exclusion of other creditors. *Buell* v. *Buckingham & Co. supra; Whitewell* v. *Warner,* 20 Vt. 425; *Railroad Company* v. *Clayborn,* 1 Speer's Eq. 562; *Sargent* v. *Webster,* 13 Metc. 497. We are not satisfied, from the evidence as to its value, that the property transferred to Ingraham was any more than sufficient to satisfy the mortgage on which it had been taken,—that at a public sale it would have brought more than the amount of the mortgage debt. If that be the case, then Ingraham really obtained no preference over other creditors in respect of his unsecured indebtedness. He but obtained satisfaction of the mortgage which he held.

We think the decree dismissing the bill was right, and it is affirmed.

*Decree affirmed.*