350:31 LRA 26

CHAUNCEY J. BLAIR et al.

v.

THE ILLINOIS STEEL COMPANY et al.

*Filed at Ottawa January 20, 1896.*

1. EQUITY—*power over fraudulent conveyance in suit to dissolve corporation.* A court of equity has power to adjudicate upon the validity of a trust deed executed by an insolvent corporation, attacked as fraudulent against creditors by a bill consolidated with an action to dissolve the corporation, in which suit cross-bill is also filed to foreclose said trust deed, full issues being made up, although some of the defendants to the cross-bill were simple contract creditors of the corporation.

2. PRACTICE—*in chancery—rights of defendant in cross-bill.* A party brought into a chancery proceeding as defendant to a cross-bill may in turn exhibit his cross-bill in the proceeding, where the same is proper for the purpose of doing complete justice and terminating the litigation.

3. CREDITOR'S BILL—*when return nulla bona is not necessary before filing.* A return *nulla bona* of an execution against a corporation is not essential to an action in equity to set aside a fraudulent deed, where the corporation is insolvent and in process of winding up and all its property in the hands of a receiver.

4. CORPORATIONS—*directors may give preference to a relative.* That a creditor of an insolvent corporation is an aunt of three of the directors does not vitiate the preference given to the debt due her by a deed of trust in which she is one of the beneficiaries.

5. SAME—*preference may be given debts guaranteed by directors.* A preference by an insolvent corporation of creditors whose debts have been guaranteed by directors of the corporation, is not invalid although made without the requirement or knowledge of the creditors, unless it otherwise appears that it was made for the benefit of the directors or guarantors, and not for that of the creditors themselves.

*O'Donnell v. Illinois Steel Co.* 53 Ill. App. 314, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

On December 10, 1892, the Will County National Bank and Joseph Stephen filed their bill in the circuit court of Will county, alleging, among other things, that the complainant, Stephen, had recovered a judgment against the Joliet Enterprise Company, a corporation of this State engaged in manufacturing barbed wire at Joliet; that execution had been issued and returned unsatisfied, and that said corporation was insolvent, and praying for the appointment of a receiver, the dissolution of the corporation, the ascertainment and enforcement of the individual liability of the stockholders and directors, and for such other, further and different relief as might be agreeable to equity.

On December 24, 1892, the Cleveland Rolling Mill Company and the Illinois Steel Company filed their bill in the said court, alleging, among other things, that the Cleveland Rolling Mill Company had recovered a judgment against the Joliet Enterprise Company, December 1, 1892, for $17,464.67, on which execution was immediately issued, and which remained wholly unpaid and unsatisfied; that said Joliet Enterprise Company was also indebted to the Illinois Steel Company in the sum of $169,751.04; that Charles M. Fish, George M. Fish, Henry M. Fish, Francis H. Connell and John Y. Brooks were directors and officers of said Joliet Enterprise Company; that said directors, Charles M. Fish, George M. Fish and Henry M. Fish, together with Henry Fish, their father, composed the firm of Henry Fish & Sons; that on November 30, 1892, the defendant corporation confessed judgment in said circuit court in favor of said firm of Henry Fish & Sons for $176,420.96, on which execution immediately issued and was levied on all the property of the corporation; that on the same day said corporation executed and delivered a trust deed to Chauncey J. Blair, trustee, securing various creditors to the amount of about $159,000; that said corporation at that time was, and for many months prior thereto had been, insolvent, and that

said confession of judgment and trust deed were unlawful attempts to prefer creditors, and praying that James L. O'Donnell, assignee of said firm of Henry Fish & Sons, insolvents, should be enjoined from enforcing said judgment, and that the judgment and trust deed should be set aside and declared null and void; that the ,trust deed be decreed to be a general assignment for the benefit of creditors; that the assets of the corporation should be marshaled, administered and distributed among all the creditors of the corporation; that liabilities of the stockholders, directors and officers should be determined and enforced, and that complainants might have such other and further relief as to equity should seem meet.

The whole property of the corporation, except such as was in the custody of the sheriff under the execution in favor of Henry Fish & Sons, and certain attachment writs, had been in the possession of a receiver appointed under a bill filed in the United States court; but on the same day that said bill of the Cleveland Rolling Mill Company and the Illinois Steel Company was filed the bill filed in the United States Circuit Court was dismissed for want of jurisdiction, and George H. Munroe, the former receiver, was appointed receiver under said bill of the Cleveland Rolling Mill Company and the Illinois Steel Company, and took possession as such.

On December 30, 1892, the court, on its own motion, and in pursuance of the stipulation and agreement of parties, consolidated the two suits so begun in the Will county circuit court, and the appointment of Munroe as receiver was extended over both.

The Joliet Enterprise Company was defaulted on the bill to wind up the corporation, but answered the bill which questioned the judgment confessed and the trust deed, and contested that bill. James L. O'Donnell, assignee for Henry Fish & Sons, in his answer claimed the right to enforce the judgment in favor of that firm for the full amount, for the benefit of their creditors. The

trustee and beneficiaries under the trust deed, in their answer, claimed the benefits conferred by the trust deed and insisted on its validity. A cross-bill was also filed by Chauncey J. Blair, trustee, and certain of the beneficiaries named in the trust deed, for the foreclosure of the same. The Cleveland Rolling Mill Company and the Illinois Steel Company answered the cross-bill, challenging the validity of the trust deed and setting out substantially the same matters averred in their original bill concerning it. Joseph S. Wiley and the Ashley Wire Company were brought in as defendants in said cross-bill, filed to foreclose the trust deed, and they answered and filed a cross-bill thereto, alleging the recovery of judgments in their favor against the Joliet Enterprise Company, and averring that no execution had issued because the property of the corporation was in the hands of a receiver, and that the trust deed was an unlawful preference and not authorized, and praying that it should be set aside and declared null and void. Afterward said Joseph S. Wiley and the Ashley Wire Company were, by order of the court, admitted as complainants in the bill of the Will County National Bank and Joseph Stephen, and on the hearing of the cause said Joseph S. Wiley filed an intervening petition, setting out the recovery of his judgment and asking to be made a party complainant with the Cleveland Rolling Mill Company and the Illinois Steel Company in their bill. The prayer of the petition was granted, and said Joseph S. Wiley filed a supplemental bill to said bill of the Cleveland Rolling Mill Company and the Illinois Steel Company, alleging that he recovered said judgment, and that no execution was issued because the property of the Joliet Enterprise Company was in the hands of a receiver, as aforesaid.

As a result of the hearing, the court found that the judgment recovered by confession in favor of the firm of Henry Fish & Sons was based upon six judgment notes of the Joliet Enterprise Company, for $29,000 each, which

were given for money actually loaned to said corporation by said Henry Fish & Sons; that said corporation was insolvent March 31, 1892, and thereafter the directors had no right to loan it money and take judgment notes therefor; that four of said judgment notes were renewals of like notes for loans made before March 31, 1892, and two were for loans made after that date; that the corporation had no power to make said last two judgment notes, because three members of said banking firm were members of the corporation; that $1000 included in the judgment as attorney's fees could not be sustained, and that $1420.96 was wrongfully included as interest, and it was decreed that said judgment should stand for $116,000 only, the principal of the four notes held valid. The findings concerning the trust deed, and the rights of the beneficiaries thereunder, were, that the several debts secured by the trust deed were all evidenced by notes of the Joliet Enterprise Company; that the debts were not created when the trust deed was made, but had existed a considerable time; that neither the trustee nor any beneficiary knew of the execution and recording of the trust deed until after it was executed and recorded by the officers of the corporation; that in every case except that of Cornelia A. Miller two or more members of the banking firm of Henry Fish & Sons, who were also directors of the corporation, were bound as guarantors, for the payment of the indebtedness by written guaranties indorsed on the notes; that as to such debts so guaranteed the trust deed was an unlawful attempt on the part of the directors to secure indebtedness for which they were personally liable; that on November 30, 1892,—the same day the trust deed was made,—the corporation paid to Cornelia A. Miller on her note $4500, leaving due her $500 and interest; that judgment was confessed on said note for $621.35, which included $50 attorney's fees; that said attorney's fees should not be allowed, and that she had a right to rely on the trust deed to the amount of $508

and interest due.   The cross-bill to foreclose the trust deed was therefore dismissed, with costs, for want of equity, except as to said Cornelia A. Miller, and except as to her the trust deed was held to be an illegal and fraudulent preference, and was set aside and canceled.

From the decree that was rendered by the circuit court an appeal was taken to the Appellate Court for the Second District by James L. O'Donnell, assignee of Henry Fish & Sons, by Chauncey J. Blair, trustee, and by the Merchants' National Bank of Chicago, the American Trust and Savings Bank of Chicago, the Third National Bank of New York, the Will County National Bank, the First National Bank of Joliet, and the Washburn & Moen Manufacturing Company, whose claims were secured by the trust deed.   In the Appellate Court numerous errors were assigned by the there appellants, and cross-errors were assigned by the Illinois Steel Company and by others.

By the judgment of the Appellate Court the decree of the circuit court was affirmed in all respects, except as to the judgment by confession in favor of the firm of Henry Fish & Sons against the Joliet Enterprise Company, and as to such judgment the decree was reversed and the cause remanded, with directions to sustain said judgment for the amount for which the same was entered, except $1420.96, which had erroneously been included as interest, and which was ordered to be deducted as of the date of said judgment, leaving said judgment as of such date at the sum of $175,000, and which judgment, with interest thereon, was ordered to be preserved as a lien upon the property of the Joliet Enterprise Company, in favor of said firm of Henry Fish & Sons and their assignee under the judgment, execution and levy.

The present appeal is by Chauncey J. Blair, trustee, and the Merchants' National Bank of Chicago, the American Trust and Savings Bank of Chicago, the Third National Bank of New York, the Will County National

Bank, the First National Bank of Joliet, and the Washburn & Moen Manufacturing Company, beneficiaries under the trust deed executed by the Joliet Enterprise Company to said Blair, as trustee.

GEORGE S. HOUSE, and E. A. OTIS, for appellants:

An insolvent corporation, acting in good faith, may prefer one creditor over another to the same extent as an individual. *Reichwald* v. *Hotel Co.* 106 Ill. 439; *Bouton* v. *Smith*, 113 id. 481; *Ragland* v. *McFall*, 137 id. 81; *Warren* v. *Bank*, 149 id. 9; *Glover* v. *Lee*, 140 id. 102.

The right and extent of the dealings of the directors with the corporation are limited only by the law of agency. *Merrick* v. *Coal Co.* 61 Ill. 475; *Harts* v. *Brown*, 77 id. 226; *Beach* v. *Miller*, 130 id. 162; *Drury* v. *Cross*, 7 Wall. 299; *Curran* v. *State*, 15 How. 307.

The law requires no more as a precedent to jurisdiction in chancery than a return by the sheriff of an execution *nulla bona;* but the return must be the act of the sheriff, on his own responsibility, and not by direction of the plaintiff in the writ. *Bank* v. *Gage*, 79 Ill. 207; *Russell* v. *Bank*, 139 id. 538; *Brown* v. *Parkhurst*, 24 id. 257.

The subject matter of a cross-bill must be germane to the matter involved in the original bill, or the bill to which it is a cross-bill. *Davis* v. *Christian Union*, 100 Ill. 317; *Gage* v. *Mayer*, 117 id. 632; *Hurd* v. *Case*, 32 id. 49.

In any proceeding in the nature of a creditor's bill a court of equity can give no relief to simple contract creditors. *Dormueil* v. *Ward*, 108 Ill. 216; *Scripps* v. *King*, 103 id. 469; *Smith* v. *Railroad Co.* 99 U. S. 398; *Parmelee* v. *Egan*, 7 Paige, 610; *Russell* v. *Bank*, 139 Ill. 538.

The dealings of a director with an insolvent corporation are purely of a character, depending, in a great measure, for their standing and validity, upon a question of good faith. *Hotel Co.* v. *Wade*, 97 U. S. 13; *Richardson* v. *Green*, 133 id. 30; *Beach* v. *Miller*, 130 Ill. 162; *Gould* v. *Little Rock*, 52 Fed. Rep. 680.

The fact that a creditor is, at the time, a director of the corporation, will not deprive such creditor of the right to enter into competition with other creditors who are strangers to the corporation, and run a race of diligence with them, availing himself in the contest of his superior knowledge and of the advantage of his position to obtain security for the payment of his debt. *Buell* v. *Buckingham,* 16 Iowa, 284; *Warfield* v. *Canning Co.* 72 id. 667; *Kendall* v. *Bishop,* 76 Mich. 634; *Bank* v. *Potts Salt and Lumber Co.* 90 id. 345; *Bank* v. *Whittle,* 78 Va. 737. See, also, the following recent decisions: *Fogg* v. *Blair,* 133 U. S. 534; *Hollins* v. *Brierfield Coal and Iron Co.* 150 id. 385; *Brown* v. *Grand Rapids Co.* 58 Fed. Rep. 286; *Sutton Manf. Co.* v. *Hutchinson,* 63 id. 496.

E. PARMALEE PRENTICE, for the Illinois Steel Company:

The deed of trust to Blair is void, as an attempt by an insolvent corporation to prefer its officers. That an insolvent corporation may not, by payments, conveyance or securities in favor of any director, create a preference over other creditors, we assume to be the unquestioned law of this court. *Atwater* v. *Bank,* 152 Ill. 605; *Beach* v. *Miller,* 130 id. 102; *Roseboom* v. *Whittaker,* 132 id. 81.

WILLIAMS, HOLT & WHEELER, (of counsel,) also for the Illinois Steel Company.

Mr. JUSTICE WILKIN delivered the opinion of the court:

In deciding this case upon the former hearing, after making the foregoing statement of facts, we said:

"This appeal brings before us so much of the order and judgment of the Appellate Court as affirms those portions of the decree rendered by the circuit court of Will county in the consolidated cause that have reference to the trust deed dated November 30, 1892.

"Appellants challenge the right of appellees, and especially that of the Illinois Steel Company, to question

the validity of the trust deed, and also seem to call in question the jurisdiction and right of the court, under the pleadings and proofs, to decree the invalidity of such trust deed, and the relief that it granted. We do not deem it necessary to inquire whether or not the Cleveland Rolling Mill Company and the Illinois Steel Company, or either of them, had so exhausted their remedies at law as to entitle them, under their original bill, to set aside said trust deed in a court of chancery.

"Appellants answered said original bill, and then, on February 9, 1893, exhibited their cross-bill to foreclose the trust deed, and the Cleveland Rolling Mill Company, the Illinois Steel Company, Joseph S. Wiley, the Ashley Wire Company, and very numerous other persons, firms and corporations, were by appellants made parties defendant to the said cross-bill, and required to answer the same. This they did, and they interposed, by way of defense to the cross-suit, substantially the same matters that had been alleged in the original bill, and made substantially the same objections to the validity of the trust deed, and thereupon appellants filed a replication to these answers, and the issues thus formed as to the validity of the trust deed were by the parties submitted to the decision of the chancellor at the hearing of the consolidated cause. We think that the circuit court, under the circumstances, had power and authority to adjudicate in respect to the matters thus submitted to it, and this even though all or some of the defendants to the cross-bill were but simple contract creditors of the Joliet Enterprise Company.

"But, even assuming that the question of the validity of the trust deed could not be raised in chancery, even by way of defense, by a creditor of the Enterprise Company without such creditor had first reduced his claim to a judgment and had exhausted all legal remedies for its collection, yet the record before us shows that the Cleveland Rolling Mill Company not only recovered a judgment

at law for its demand of $17,464.67, and had an execution issued thereon on December 1, 1892, on which the sheriff, on December 24, 1892, endorsed a return of no property found, but that said execution and return were on January 6, 1893, filed in the office of the clerk of the circuit court, and that the demands of the Ashley Wire Company and Joseph S. Wiley were reduced to judgments on January 23, 1893, and that no executions were issued on said judgments because all the property of the Joliet Enterprise Company then was, and for a long time had been, in the hands of a receiver and in the custody of the court.

"There may be some question as to the sufficiency of the return on the execution based on the judgment for $17,464.67, but there can be no question but that the Ashley Wire Company and Wiley had a clear right to contest the trust deed. When their judgments were recovered all the property of the Enterprise Company was in the custody of the law, in charge of the receiver in the consolidated suit, composed of the winding-up bill exhibited by the Will County National Bank and Stephen, and the subsequent bill of the rolling mill company and the steel company, and in that state of the case the issuance and attempted levy of executions would have been a vain and idle ceremony, and probably a contempt of court. In *Steere* v. *Hoagland,* 39 Ill. 264, this court said that the general rule was, that there must be a judgment and a return of no property, before a creditor's bill will be entertained, yet that to that rule there were well recognized exceptions, and the case of a deceased debtor was there held to be one of the exceptions, since under our statutes an execution cannot issue against an administrator so as to reach personal assets. The same principle has application in the case at bar. Where a debtor corporation is insolvent, and all its property is in the hands of a receiver in a suit in equity brought under section 25 of chapter 32 of the Revised Statutes for the purpose of dissolving and closing up the business of such corpora-

tion, the case is one of an exception to the general rule that there must be a return of *nulla bona*, upon which to base the right of a creditor to contest, in equity, a transfer of property made by the debtor.

"There can be no doubt but that the decree dismissing the cross-bill to foreclose was fully authorized by the issues formed therein, and to any question made as to the authority of the court to grant the affirmative relief of decreeing the cancellation of the trust deed, it is a sufficient answer to say, that the Ashley Wire Company and Wiley not only interposed answers to the cross-bill to foreclose, but also each filed a cross-bill praying that the trust deed should be set aside and declared null and void, and that Wiley afterwards filed a supplemental bill of like tenor, and that appellants answered, and issues were formed upon such bills. In this state of the case it is hardly worth while to inquire whether or not it was proper practice to allow the filing of cross-bills to a cross-bill. It may be remarked, however, that the statute provides that any defendant may, after filing his answer, exhibit and file his cross-bill, and no good reason is perceived why defendants who are only brought into the suit by a cross-bill may not also exhibit cross-bills, where the same are necessary or proper for the purposes of doing complete justice and terminating the litigation.

"If we assume that the circuit court decided properly in decreeing the invalidity of the trust deed and in setting it aside, then such decree was for the benefit of the Illinois Steel Company and all other of the general creditors of the Joliet Enterprise Company, as well as for the benefit of Wiley and the Ashley Wire Company. The property covered by the trust deed, and all other property of the insolvent corporation, was in the possession and control of the receiver appointed as well in the winding-up suit brought by the Will County Bank and Stephen, as in the suit of the Illinois Steel Company and others, that had been consolidated with it. The prayer

of the winding-up bill was, that a decree should be entered dissolving the insolvent corporation, and for an accounting of all such matters wherein an account was necessary, and for the appointment of a receiver, under the statute, with authority to close up its affairs, and for such further and other relief in the premises as should be agreeable to equity and good conscience. The whole consolidated cause was submitted to the court,—the two original bills and the various cross-bills,—and the issues formed on such bills, and when the court decreed upon one branch of the consolidated cause that the trust deed should be set aside as to the insolvent corporation and its creditors, then the proceeds of the property covered by said deed, as well as the proceeds of all other property of the insolvent corporation, was properly decreed, after the payment of the several parties found to be entitled to priorities, to be paid *pro rata* to Joseph Stephen, the Will County National Bank, Joseph S. Wiley, the Ashley Wire Company, the Illinois Steel Company, the numerous other creditors named in the decree who were parties to the consolidated cause, and all other creditors of the Enterprise Company proving their claims.

"When a court of equity acquires jurisdiction over the assets of an insolvent corporation for the purpose of administering upon them, it will administer the assets upon the principle that equality is equity, and will distribute such assets ratably among all the creditors, paying due regard, however, to legal rights and preferences existing before it takes jurisdiction. (*Atwater* v. *American Exchange Nat. Bank,* 152 Ill. 605 ; *Butler Paper Co.* v. *Robbins,* 151 id. 588.) Here the jurisdiction of the court of chancery attached on December 10, 1892, when suit in equity was brought, under the statute, for the purpose of dissolving the Joliet Enterprise Company and closing up the business of said corporation. The subsequent filing, in the same court, of a creditors' bill, and of cross-bills in the nature of creditors' bills, and of answers to the

cross-bill to foreclose the trust deed, did not have the effect of giving to some of the creditors preference over the other creditors; nor, indeed, do we understand that such a claim is made in behalf of any of the creditors. The principal controversy upon this appeal is whether or not the Joliet Enterprise Company had the right to make the preferences that it did by the trust deed of November 30, 1892, executed to the appellant Blair, trustee.

"We have held in numerous cases than an insolvent corporation, as well as an insolvent natural person, has the right, in the absence of a fraudulent intent, to make preferences among creditors. (*Reichwald* v. *Commercial Hotel Co.* 106 Ill. 439; *Bouton* v. *Smith*, 113 id. 481; *Burch* v. *West*, 134 id. 258; *Ragland* v. *McFall*, 137 id. 81; *Glover* v. *Lee*, 140 id. 102; *Warren* v. *First Nat. Bank*, 149 id. 9; *Butler Paper Co.* v. *Robbins*, 151 id. 588; *Gottlieb* v. *Miller*, 154 id. 44.) Such preference may even be given to the wife or a relative of directors or officers of the corporation, provided no pecuniary advantage is thereby obtained by such directors or officers. (*Ragland* v. *McFall, supra; Gottlieb* v. *Miller, supra; Schroeder* v. *Walsh*, 120 Ill. 403.) Therefore, in the case at bar, the court properly held that the fact that Cornelia A. Miller was an aunt of three of the directors of the insolvent company did not vitiate the preference given to the debt due her.   *   *   *

"It is assigned as error that the Appellate Court erred in holding that the circuit court had power, even by consent of counsel, to order the lands, premises and plant of the Joliet Enterprise Company to be sold without redemption, and to direct the receiver of said corporation to execute and deliver deeds of conveyance to the purchaser thereof upon the confirmation of said sale, without reserving any right of redemption. In our opinion, the decision in *Locey Coal Mines* v. *Chicago, etc. Coal Co.* 131 Ill. 9, does not control in this case. The decision there made was based on the statute, which expressly makes subject to the right of redemption all sales of real estate

made 'by virtue of an execution, judgment or decree of foreclosure of a mortgage, or the enforcement of a mechanic's lien or vendor's lien, or for the payment of money.' The sale there involved was one ordered in a decree rendered upon a creditor's bill to enforce the collection of a judgment at law, and it was considered that the decree was one 'for the payment of money,' viz.; the amount due on the complainant's judgment, and also considered that the creditor's bill was to be regarded as a species of process for the execution and enforcement of a judgment at law. Here there was no decree of foreclosure and sale under the trust deed, even in favor of Mrs. Miller. The payment of the small amount remaining due and unpaid upon the debt secured to her, was, by agreement of parties, otherwise provided for. Nor was any decree of sale rendered upon the creditors' bills, or cross-bills of either the Illinois Steel Company, the Cleveland Rolling Mill Company, the Ashley Wire Company or Joseph S. Wiley, giving them, or either of them, preference over the other and general creditors. The only effect accomplished by said bills and cross-bills, and by the answers to the cross-bill to enforce the trust deed, was to set aside said trust deed as a preference, and leave the real estate and plant as an asset in the hands of the receiver, wholly unincumbered thereby.

"The decree for the sale of the real estate of the Joliet Enterprise Company, to be made by the receiver without redemption, was manifestly based upon the winding-up bill and the statute that provides for the dissolution and winding up of insolvent corporations.

"We think that the statute upon which the decision in *Locey Coal Mines* v. *Coal Co. supra,* was based, has no application to the matter of a decree for the sale of real estate ordered to be made by the receiver in a suit in equity brought under our winding-up statute for the purpose of dissolving an insolvent corporation and closing up its

business and affairs. The decree for a sale without redemption was the proper decree to be entered."

That part of the decree of the circuit court which dismissed the bill of these appellants was then affirmed, on the ground that the trust deed was, as to them, for the benefit of those directors of the corporation who had guaranteed the payment of the notes secured by it, and therefore made in violation of the rule that the directors and other agents of an insolvent corporation cannot give themselves any advantage or preference in payment of claims due them by the corporation at the expense of other creditors. The correctness of this position is the only question before us upon this rehearing, and we are satisfied, upon a further consideration of the case, that the position there taken cannot be maintained.

That a corporation, although insolvent, can prefer creditors not officers of the company has been too long and firmly established by the decisions of this court to be now the subject of controversy. We said in *Warren* v. *First Nat. Bank of Columbus,* 149 Ill. 9: "The doctrine is recognized here that the property of an insolvent corporation is a trust fund, in such sense as precludes the directors and officers of the corporation from dealing with it in such manner as to secure preferences for themselves. (*Roseboom* v. *Whittaker,* 132 Ill. 81; *Beach* v. *Miller,* 130 id. 162.) But we have not gone so far as to hold that the mere insolvency of a corporation *eo instanti* deprives the directors and officers of the power to dispose of the corporate property, in good faith, by way of paying or securing corporate debts, even though the result may be to give certain creditors a preference over others." The rule laid down in Cook on Corporations is: "Corporations, unless restricted by their charters or by general statutes, may make assignments for the benefit of creditors to the same extent that individuals may. In making the assignment the corporation may make preferences for one or more creditors over others or of one class of cred-

itors over other classes." In the case of *Warren* v. *First Nat. Bank of Columbus, supra,* this rule was held to be in harmony with our decisions in *Reichwald* v. *Commercial Hotel Co.* 106 Ill. 439, *Ragland* v. *McFall,* 137 id. 181, and *Glover* v. *Lee,* 140 id. 102. To the same effect is *Gottlieb* v. *Miller,* 154 Ill. 44, where it is said (p. 53): "That the doctrine that we have so frequently held and that we are here so strenuously urged to change or modify,—that in the absence of legislation an insolvent corporation may make a preference among creditors, subject to the same restrictions that apply to individual debtors,—is in accord with the great weight of authority, is indicated by the following list of cases in which like doctrine is announced,"— citing a long list of authorities. So we hold in this case, that the preference given by this trust deed to Mrs. Cornelia A. Miller was not unlawful, she being merely a creditor of the corporation, having no indorsement or guaranty from its directors. That the Merchant's National Bank of Chicago, the American Trust and Savings Bank of Chicago, the Third National Bank of New York, the Will County National Bank, the First National Bank of Joliet and the Washburn & Moen Manufacturing Company, whose claims were secured by the trust deed, were all *bona fide* creditors of the insolvent corporation is not questioned. That they were guilty of any fraud or misconduct which would deprive them of the same rights accorded to Mrs. Miller or any other *bona fide* creditor is not claimed. Therefore the grounds, and only grounds, upon which it is contended or can be held that they were not entitled to be preferred as creditors of the corporation is, that certain directors of the corporation had guaranteed the payment of their debts. If it is a sufficient reason for depriving them of that right, it must be upon the theory that otherwise the preference would result in some benefit to the guarantors, directors of the company, and that, too, without any proof tending to establish that fact,—that is to say, there is no affirmative

proof in this record that these guarantors are solvent or can be made to respond to these creditors for any balance which may remain due them after the company assets are exhausted. For anything here appearing, if the contention that because the creditors had the names of the directors upon their notes as guarantors deprives them of the right secured to other creditors to be preferred be maintained, they must suffer loss merely because they had such guaranty. We do not understand that the rule which authorizes an insolvent corporation to give preference to one or more of its creditors, or a class of creditors, in the distribution of its assets, to the exclusion of others, is limited by the mere fact that such preference may, in a certain contingency, result in benefit to directors of the company, and the authorities, so far as we have been able to ascertain, are to the contrary. While it is not so decided, in terms, in the case of *Sanford Fork and Tool Co.* v. *Howe, Brown & Co.* 157 U. S. 312, it is inferentially so held. Justice BREWER, in rendering the opinion of the court, puts these questions: "Would it be doubted that if this mortgage had been given directly to the holders of these notes it would have been valid? Are creditors who are neither stockholders nor directors, but strangers to the corporation, disabled from taking security from the corporation by reason of the fact that upon the paper they hold there is also the indorsement of certain of the directors or stockholders? Must, as a matter of law, such creditors be content to share equally with the other creditors of the corporation, because, forsooth, they have also the guaranty of some of the directors or stockholders, whose guaranty may or may not be worth anything?" The case of *Henderson* v. *Indiana Trust Co.* 40 N. W. Rep. (Ind.) 517, involves the decision of this very question, and it is there held, as stated in the syllabus of the case: "An insolvent corporation, while in possession of its property, may prefer any of its creditors not directors or stockholders, even though their claims

are secured by the indorsement of directors and stock-
holders, where the creditors were, at the time of the pref-
erence, unaware of its insolvency, or that the transfer
was made to protect such directors and stockholders."

But it is unnecessary to further pursue this inquiry.
We do not understand counsel for appellee to seriously
question the correctness of the position that the mere fact
that the directors of the company had guaranteed the
payment of the debt would not be an insuperable ob-
jection to the creditor availing himself of a preference
made in his favor.    They say: "The case at bar is very
different from the cases cited in the two petitions for a
rehearing, and the difference is just this: that in these
cases, such as *Henderson* v. *Indiana Trust Co. supra*, the
creditor, who was preferred, exercised diligence for his
own protection; in the present case the preference was
a gift, pure and simple, voluntary on the part of the
directors and unsought by the donees.    It is not claimed
on behalf of the steel company that creditors who have
secured the guaranty of directors of the corporation are
by that fact always and necessarily prevented from ob-
taining a preference when the corporation becomes in-
solvent.  If the corporation fails, all creditors are entitled
to exercise the highest diligence in their behalf, and when
that diligence has been exercised, it may be that they are
entitled to the fruits of it, whether they had the guaranty
of creditors or not."    The right of these beneficiaries to
a preference is thus made to depend upon the exercise of
diligence on their part to obtain the preference, and not
merely upon the fact that they had the guaranty of cer-
tain directors upon their paper.  It is true that the circuit
court found, as shown in the foregoing statement of facts,
"that neither the trustee nor any beneficiary knew of the
execution and recording of the trust deed until after it
was executed and recorded by the officers of the corpo-
ration."    That finding of fact, it will be seen, applied to
Mrs. Cornelia A. Miller as well as to the other benefi-

ciaries in that deed, and yet it is not pretended that her right to a preference depended upon any act of diligence upon her part. Why, then, in the absence of proof tending to show that this preference to the other creditors was not for their benefit but for the benefit of the directors, should the question of diligence cut any figure in the case?

We assume that it will not be seriously contended that the right of an insolvent individual or corporation to prefer creditors is in anywise conditioned upon the act of the creditor. The right to prefer a creditor rests upon the principle that so long as the debtor retains control and dominion over his property he may do with it as he sees fit, and discharge one obligation to the exclusion of another, presumably upon the theory that he regards the claim of one debtor more meritorious than another. In our view of the case, the fact that the trust deed was executed without the knowledge of the creditors, or without their having insisted upon its execution, is wholly immaterial, unless it can be said that that fact, of itself, is sufficient to justify the conclusion that it was executed for the benefit of the directors or guarantors upon the note and not for the benefit of the creditors themselves, —and this certainly cannot be claimed. This trust deed conferred a direct benefit upon the creditors, by way of preference. That it might result in benefit to the guarantors or directors is a mere inference or conjecture.

We think the decree of the court below in dismissing the cross-bill of appellants was erroneous and should be reversed. The cause will be remanded, with instructions to it to enter a decree in conformity with the prayer of that bill.                    *Reversed and remanded.*

Mr. JUSTICE CARTWRIGHT took no part in the consideration of the case in this court.